176 So. 340

**DOWLING v. SOLLIE & SOLLIE et al.**

**4 Div. 940.**

Supreme Court of Alabama.

Oct. 7, 1937.

Rehearing Denied Oct. 28, 1937.

J. Robert Ramsey, of Dothan, and Steiner, Crum & Weil and Alex C. Birch, all of Montgomery, for appellant.

Sollie & Sollie, of Ozark, and Farmer, Merrill & Farmer, of Dothan, for appellees.

GARDNER, Justice.

Complainants are the members of two law firms, Sollie & Sollie, and Farmer, Merrill & Farmer, who held in trust the sum of $52,500 collected by them in compromise of some eleven insurance policies, totaling the sum of $76,000, issued upon the property of the Rainbow Manufacturing Company, Inc., an insolvent corporation, whose property was destroyed by fire, and containing simple or open mortgage clauses.

Three of these policies, aggregating $18,500, were held by H. H. Dowling, appellant here, payable to him as his interest might appear. Dowling held the first mortgage on the property, as well as some retention title notes, which latter indebtedness, it is insisted, was novated by the execution of a chattel mortgage on the same property; a question we consider immaterial for determination here.

The Ozark National Bank held no mortgage, but had policies totaling $9,500, with loss payable clause in its favor.

To some of the directors the Rainbow Manufacturing Company was indebted in a sum less than $6,000 for money advanced, and all directors had indorsed or guaranteed the indebtedness of the corporation in a sum in excess of $60,000, to secure which a junior mortgage had been executed to them by the corporation, and a short time before the fire, as further security, insurance policies totaling $26,000 were issued to the corporation, with loss payable clauses in their favor, to some of the directors; among them, J. D. Holman. The Panama City National Bank, to secure a line of credit of $30,000, held the remaining policies, and a second mortgage on the property, wherein the Dowling mortgage was expressly recognized.

After the fire, these eleven policies came into the hands of complainants for proof of loss and collection. A compromise was effected, and the above-stated sum of $52,500 was to be held in trust and deposited by them in bank, less the agreed fee of

$5,000, and to be paid out when conflicting claims were settled, either by agreement of parties or decree of court.

These conflicting claims are made fully to appear by the pleadings, and need not here be detailed, as they were each adjusted, with the exception of appellant Dowling, by compromise agreement in open court, and decree of distribution rendered thereon.

■ Appellant assumes the bill is one of strict interpleader requiring an assertion of perfect disinterestedness as an essential ingredient on the part of complainants as mere stakeholders, indifferent between the conflicting claimants, and cites Missouri State Life Ins. Co. v. Robertson Banking Co., 223 Ala. 177, 134 So. 800; Steele v. First National Bank, 233 Ala. 246, 171 So. 353, wherein is noted also First National Bank v. McKee, 227 Ala. 573, 151 So. 444.

As originally presented, it is clear enough the bill met all requirements, and we are not prepared to say that as the cause progressed complainants, trustees of the fund and charged with its proper distribution, were prevented by the rule of disinterestedness to present to the court the true status in regard to the Dowling claim, though it be in opposition thereto. But that question may be put to one side and left undetermined, as we entertain the view the bill comes within the influence of the principle recognized in Wilkes v. Teague, 224 Ala. 283, 140 So. 347, and may properly be denominated as one in the nature of a bill of interpleader, wherein the matter of disinterestedness is not essential. See, also, Pomeroy Eq.Jur. (4th Ed.) § 1481, and 33 Corpus Juris 423, with authorities cited in note.

The compromise agreement with the insurance companies amounted to a payment of 70 cents on the dollar.

Appellant Dowling held policies totaling $18,500 for a debt slightly less. His policies, as well as all others, provided, in case of loss, the insurers should pay only three-fourths of the cash value of properties destroyed, and that losses should be prorated among them. He was slow to join other policyholders in the employment of counsel and payment of any expenses incident to collection. He insisted he held a first mortgage and was entitled to payment in full of his claim. And when he turned over to the Farmer firm his policies for collection, he requested a receipt stating his insistence upon full payment, and that additional insurance did not affect his rights; the receipt reciting that he held a first mortage on the property insured. And when the compromise checks for his policies were received, he requested, and was given, another written statement to the effect that upon collection of the checks the full amount would be paid to him less his share of fees and other items, including cost in garnishment proceedings, and that sums of money on other insurance checks would be deposited in bank so as to avoid any suggestion of waiver on his part to claim additional sums of money as first mortgagee, and so held until his rights as first mortgagee had been adjusted and adjudicated.

And in the decree of distribution rendered pursuant to settlement between all parties, except appellant, there was reserved the right of appellant to litigate as to his insistence for full payment, and the sums ordered paid to some of the parties (Manget Brothers Company, First National Bank of Troy, Schell-Longstreth & Co., and the trustee in bankruptcy of J. D. Holman) were to be held within the jurisdiction of the court either in cash or withdrawal bonds, to await the matter of adjudication of appellant's claim, "as shown by the pleadings in this cause." At that time the pleading of appellant, his answer, disclosed only that his claim rested upon a first mortgage and transfer of retention title notes.

More than a year after this decree of distribution, appellant for the first time based his claim upon a verbal agreement of the mortgagor to insure for his benefit, and a resolution of transfer by the directors of the Rainbow Manufacturing Company of all interest in the policies issued in their favor, which occurred some nine months following said distribution decree.

■ Appellant now chiefly relies upon these assertions of claim, with particular reference to the alleged verbal agreement of the mortgagor to insure the property for his benefit in a sum sufficient for his protection. He relies upon the recognized principle, as stated in Commonwealth Ins. Co. v. Terry, 230 Ala. 125, 159 So. 822, 825, that, "if by contractual relations between mortgagor and mortgagee the insurance should have been taken out for the mortgagee's benefit, equity, treating that as done which ought to have been

done, may, in a proper case, declare an equitable lien on the proceeds in favor of the mortgagee." See, also, 8 Couch on Insurance § 1936-c; Cooley's Briefs on Insurance .(2d Ed.) page 6290.

And it has been held that a valid verbal agreement by the mortgagor to effect such insurance will suffice. 8 Couch on Insurance, supra, note 5. And there are authorities also to the effect that as such a situation creates in the mortgagee only a latent equity, that the equitable lien is not enforceable as against an assignee for value and without notice. 8 Couch on Insurance, § 1936-c; 7 Cooley's Briefs on Insurance (2d ed.) pp. 6294, 6295; Juneau County State Bank v. State Bank of Mauston, 181 Wis. 430, 195 N.W. 396; First National Bank v. Commercial Union Assur. Co., 40 Idaho 236, 232 P. 899; Miller v. Aldrich, 31 Mich. 408.

And appellant's chief reliance for recovery of additional sums from the proceeds of the policies, issued to the mortgagor and payable to the directors as their interest may appear, is based upon the insistence that the mortgage to the directors was intended only as indemnifying against loss and not against liability (King v. Capitol Amusement Co., 222 Ala. 115, 130 So. 799), and that as the directors became bankrupts without having paid or suffered any loss, nothing was due.

While on the other hand, appellees insist that the mortgage to the directors was due and payable on a day certain; that as sureties the directors had the right to proceed against the principal independently of their prior payment of the debt, and that the obligation to the directors was absolute; citing Cooper v. Parker, 176 Ala. 122, 57 So. 472; Smith v. Gillam, 80 Ala. 296; Searcy v. Shows, 204 Ala. 218, 85 So. 444; Daniel v. Hunt, 77 Ala. 567.

But the conclusion here reached renders unnecessary a consideration of these several insistences. They are stated as merely disclosing in part a brief outline of the various contentions of the parties.

Upon a careful review of all the evidence, we are persuaded the principle of equitable estoppel is decisive of this case adversely to this appellant, and that upon that question little need be said. It is clear enough that appellant from the very beginning to the time of his amended answer, filed more than a year following the decree of distribution, rested his contention solely upon the priority of his mortgage and retention title notes. He entered conferences looking to the collection of insurance, and the issuance of garnishment suits even before he turned his policies over to these law firms. He was slow to join the other policy-holders, so sure was he that his prior mortgage position made him secure for the full amount of his debt, and that in fact he felt no need for a lawyer. And we think it clear enough also that he led his attorneys to understand that his sole right to full payment rested upon his prior mortgage.

True, he was careful to preserve his right to litigate, but all parties concerned were given to understand that the litigation was to be upon this one question, and none other. They so understood by his words and conduct when the compromise was made with the insurance companies and the proceeds deposited in the bank. And when the decree for distribution among all the other claimants of the proceeds was entered, appellant was present in person, though not by attorney, and exhibited to the chancellor his mortgage and retention title notes as constituting his only claim to full payment, and such was his only contention in the answer then on file. Counsel representing opposing interests then had a conference, and agreement was reached for the entrance of the decree distributing the funds among the several contenders as therein specified. And the proof is emphatic that counsel so agreed to such a distribution in reliance upon appellant's attitude that his prior mortgage and retention title notes constituted his sole right to full payment. Satisfying themselves as to that contention, they were ready to proceed with adjustment among themselves, and assume any risk incident to such a contention. They had no notice whatever of any other insistence. Neither appellant's mortgage nor his retention title notes contained any agreement on the part of the debtor that insurance would be procured for appellant's protection. That was a matter resting in appellant's breast as an undisclosed verbal agreement.

But we forego further discussion as to this particular phase of the case, as we consider it very clearly shown by the proof that appellant by his words and conduct did in fact mislead all parties concerned, including these attorneys who represented him in the matter of the collection of his policies, into the understanding and belief that the sole ground of his contention for full pay-

ment rested upon the priority of his mortgage· and notes.

■ Of course, as argued by appellant, in order to create an estoppel in pais, the party pleading it must have been misled to his injury; that is, he must have suffered a loss of a substantial character or have been induced to alter his position for the worse in some material respect. 21 Corpus Juris 1135; Crawford v. Engram, 157 Ala. 314, 47 So. 712. But we think this essential has been met with the proof.

True enough, all the parties were desirous of a settlement with the insurance companies. There were many apparent obstacles in the way, and one of the most serious concerned the value of the property destroyed. And from the proof the policy-holders obtained a satisfactory and advantageous settlement.

Appellant at first stood back, but later joined in and paid his pro rata share of the fees and cost. His joinder was upon the agreement to litigate for full payment. But upon what basis? All understood from him it was to be solely on the basis of the fact he held a first mortgage. And upon that understanding the settlement was had, garnishment suits were dismissed, and the decree for distribution entered. Upon policies payable to the directors there was collected more than $17,000. The Rainbow Manufacturing Company was indebted to some of them for money loaned amounting to something less than $6,000, and to Manget Brothers Company, for which the directors were sureties, about $40,000. The directors being in bankruptcy, the trustees set up as their own what they claimed as the rights of the directors.

The First National Bank of Panama City also claimed an agreement for insurance in its behalf to fully protect its debt, and that it was entitled to many thousand dollars out of the money going to others, as shown by its answer subsequently filed.

Suits had been filed by Manget Brothers Company and the First National Bank of Troy against the directors, garnishments against said insurers or most of them, and judgments obtained which were considered in the compromise settlement with the insurers. The debt to the First National Bank of Troy was that of the directors, and not the Rainbow Manufacturing Company.

When the fire occurred the directors of the Rainbow Manufacturing Company, but not the company itself, were indebted to Schell-Longstreth & Co. in the sum of $7,500, upon which they had been sued in the federal court, which suit was then pending. A short time after the fire this suit was settled, and dismisssed, and the debt satisfied upon consideration of the assignment by the owners, that is, the directors of the Rainbow Manufacturing Company, to said Schell-Longstreth & Co. of one of the policies held by them in the sum of $7,500. The Rainbow Corporation was also largely indebted to the First National Bank of Ozark, to secure a part of which it procured insurance policies aggregating $9,500, which said bank assigned to the Federal Reserve Bank of Atlanta.

We here attempt no detail statement, but merely a general outline. The conflicting claims to the insurance funds of the several parties are made more clearly to appear in the pleadings on file, and to enumerate them here would extend this opinion to undue length and serve no useful purpose. The record is voluminous, being here presented in three separate volumes, and as the decision rests in the main upon the one question of estoppel, there is no occasion for detail statements.

The decree of distribution shows upon its face something of the conflicting claims, and the manner of their adjustment. Illustrative is the claim of the First National Bank of Panama City, wherein it was claiming $3,500 in excess of the sum collected for it, and the settlement thereof for $1,000, the sum of $750 to be paid out of money due the Federal Reserve Bank and $250 out of money collected for Schell-Longstreth & Co. Further illustrative is the merged interest of Manget Brothers and First National Bank of Troy, though the latter was a creditor only of the directors. The money going to the trustee in bankruptcy for Holman, to Manget Brothers, and First National Bank of Troy, and to Schell-Longstreth & Co., is held under the court's jurisdiction to await litigation of this appellant on his claim as shown by his pleading then on file. All of this money was withdrawn by giving bonds as provided for in the decree, except that due the trustee in bankruptcy of Holman. With all of these conflicting claims existing, the parties agreed among themselves upon terms of settlement as disclosed by the decree, and the funds of those above named were designated as the funds to be held within the·

court's jurisdiction to await appellant's litigation.

Counsel conferred and agreed. They evidently apprehended no difficulty in defeating any such claim, but to satisfy appellant and meet his conditions the right to litigate must be preserved. They had no reason to suspect any other ground for his claim than those previously herein mentioned, and which were in his answer on file. Being thus led by him to understand his claim was so limited, they advised their clients and acted accordingly.

Complainants made payment on the strength of this decree, and withdrawals were had by the others (Holman's trustee excepted) by execution of bonds. Appellant had already been paid, but a small balance was due, for which decree was rendered, and subsequently paid him. The entire matter was thus adjusted, with the single exception of this appellant who reserved the right of litigation.

Should appellant now prove successful, those parties whose funds are held accountable by the consent decree must suffer the loss, though no loss would ensue should appellant be held to the sole ground of his claim, as they were led to believe. That the parties have been misled, and induced to alter their position for the worse in some material respect, we think, is clearly established; and that appellant, aside from any other question, is barred from relief by the doctrine of equitable estoppel.

The resolution of the board of directors passed long after the distribution decree stands in no better light, and what has been said suffices also as an answer thereto.

■ We do not find in appellant's brief any matter which may be called an argument on the ruling on demurrer to some special pleas, and this assignment, therefore, needs no consideration here. Nor would any practical good have resulted therefrom as the matter of estoppel was otherwise sufficiently presented in the pleadings, and in fact constituted one of the principal objectives of all the testimony in the cause.

■ It is suggested a reversal should be had for that the Rainbow Manufacturing Company was a necessary party to the suit. The case of Aetna Ins. Co. v. Koonce, 233 Ala. 265, 171 So. 269, cited by appellant, has reference to a suit on the policy. No such situation is here presented. Insurers have been settled with and released, and the Rainbow Corporation is insolvent. Courts are organized for practical purposes in the administration of justice. Appellant is denied relief upon the theory of an estoppel. Clear enough the original bill, one in the nature of a bill of interpleader, discloses no such interest in the Rainbow Corporation as to necessitate its being made a party, and it is equally clear the proof shows no such interest. Looking to practical ends, such a procedure would be entirely useless. The Michigan court, in Miller v. Aldrich, 31 Mich. 408, upon like reasoning, reached a similar result. The absence, therefore, of the Rainbow Corporation presents no reason for a reversal.

We find no reversible error in the decree, and it will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.