37 So.2d 664

## HEAD v. SELLERS.
### 6 Div. 597.

Supreme Court of Alabama.
Nov. 12, 1948.

Rehearing Denied Dec. 16, 1948.

Wm. S. Pritchard, Winston B. McCall, Victor H. Smith and Pritchard & McCall, all of Birmingham, for appellant.

456

Lange, Simpson, Robinson & Somerville, of Birmingham, for appellee.

SIMPSON, Justice.

The main question on this appeal is whether the plea in abatement—Plea A—set up sufficient facts to show that the bill of complaint was prematurely filed seeking the foreclosure of a pledge of certain personal property as security for the two unpaid notes set out in the bill. The trial court held that the plea was sufficient and was proven, and made a decree abating the suit, from which plaintiff has appealed to this court.

Those two notes were the last of a series executed by appellee to appellant representing the balance of the purchase price of thirteen shares of stock of the Baggett Transportation Company, a corporation. They were due respectively on or. before January 2, 1946, and January 2, 1947.

The bill was filed February 8, 1946, alleging that the maturity of said notes was accelerated and that they actually matured before the dates named for maturity because of a contemporaneous contract executed between the parties, whereby appellant sold appellee said stock, which provided, as security for payment, (a) that appellee, the maker of the notes, pledged to promptly apply on their payment sixty per cent of the net income received by him from a partnership between himself and J. D. Baggett, which had a school book contract with the State of Alabama; and (b) that, as and when received, seventy-five per cent of all dividends paid on said stock (thirteen shares bought by him from appellant, also pledged as security) at any time prior to the date said debt was paid in full should be applied to the payment of the notes evidencing the debt; and (c) that all salaries paid him by the corporation before the debt is paid in full in excess of $60 per week should be considered and treated as dividends, seventy-five per cent of which should be applied in payment of said indebtedness. Said money, in each case, was to be applied to the next maturing note (See Section 3 of contract).

The bill then alleges that prior to January 2, 1946, appellee had received large sums from all three of those sources which should have been applied to the payment of the debt, but which were not so applied; that if said money had been so applied, it would have fully paid the notes prior to January 2, 1946, and (by an amendment) prior to the time when a tax liability was asserted against the said corporation by the Commissioner of Internal Revenue April 19, 1945. The notes contain an acceleration clause that upon default in the pay-

ment of one of said notes all notes remaining unpaid shall become immediately due and payable as of the date of the first default to occur.

The defense to abate the suit is founded on rights claimed under Section 4 of the contract, which provided that if certain unknown and contingent liabilities against the company should later arise, Head, the vendor of the stock, should be required to make certain credits on the notes. Section 4 is:

"(4) It is understood that the purchaser has paid and agreed to pay the above sums, [the amounts represented by the stock purchase notes] for said stock, relying upon the books of the Company as to the present condition of the company. It is expressly agreed that in the event liability for taxes of any kind (including income taxes) not now known by the Purchaser to exist, and not now shown by the books of the Company as a liability, shall later be assessed and paid and in the event liability for violation of any law (including the Federal Motor Carrier Act, 1935, as amended [49 U.S.C.A. § 301 et seq.]) shall be imposed or asserted by any Federal agency or by any Court on the complaint of any Federal agency (including the Interstate Commerce Commission) or by anyone else claiming under such a law, and said liability shall be paid by the Company, either under order of Court or by compromise, then and in that event Beverly P. Head, Jr., shall credit on the next maturing note held by him thirteen-fortieths (13/40ths) of such additional liability so imposed on the company and paid by it. In the event, however, said notes have been paid in full prior to the discovery of such additional liability, the Vendor shall be under no obligation to make good the same.

"In the event the amount to be credited hereunder shall exceed the balance then remaining unpaid on said notes, there shall be no obligation on the part of the Vendor to pay such excess."

Appellant advances first the proposition that dividends on pledged stock during the pendency of the pledge belong to the pledgee and that the pledgor holds the same as trustee for the pledgee and subject to the pledgee's lien which may be enforced in equity, and cites First National Bank of Anniston v. Wellborn, 237 Ala. 183, 186 So. 549, 550; Garvy v. Blatchford Calf Meal Co., 7 Cir., 119 F.2d 973, 975; 41 Am.Jur. 608, § 34; Peoples-Pittsburg Trust Co. v. Saupp, 320 Pa. 138, 182 A. 376, 103 A.L.R. 849; 67 A.L.R. 485; National Bank of Commerce v. Equitable Trust Co., 8 Cir., 227 F. 526, certiorari denied, 239 U.S. 648, 36 S.Ct. 221, 60 L.Ed. 485; Jones on Collateral Securities and Pledges (3d Ed.), § 398. But this principle could have but limited, if any, application to the situation here presented. The relationship of the respective parties with regard to the dividends rests not upon the general rule of law, but is fixed by the contract. It is on the contract that appellant bases his right, and just what that right is is determinable by a proper construction of the contract.

The major contention of the appellant, the theory upon which he proceeds for relief, is that he is entitled to the benefits of the equitable maxim that equity regards that as done which ought to be done. It is his insistence that since the appellee, by the contract, obligated himself to apply the dividends from the sources indicated, in the proportions stipulated, to the payment of his notes, and since he did receive dividends in substantial amounts which should have been paid over to appellant, as and when received, but failed to so pay them, for the purpose of fixing the status of the parties equity will treat the payments that ought to have been made as actually having been made and at the times they should and could have been made. The maxim asserted by appellant has been applied by this court in a variety of situations. Some of our cases are: Copeland v. Warren, 214 Ala. 150, 107 So. 94; City Garage & Sales Co. v. Ballenger, 214 Ala. 516, 108 So. 257; Kirkland v. O'Kelley, 218 Ala. 68, 117 So. 420; Jefferson Lumber Co. v. Powers, 223 Ala. 63, 134 So. 464; Bishop v. McPherson, 232 Ala. 594, 168 So. 675; Dowling v. Sollie & Sollie, 234 Ala. 630, 176 So. 340; Winston v. Winston, 242 Ala. 45, 4 So.2d 730.

Whether the doctrine is applicable hinges, of course, upon the existence of a

duty, and that, in this case, is determined by the contract. As was said in Jefferson Lumber Co. v. Powers, supra, [223 Ala. 63, 134 So. 467] "the stated maxim 'cannot be invoked to create a right contrary to the agreement of the parties, or in disregard of essential conditions for which the parties have stipulated.'" See, also, 19 Am.Jur. 315, § 456.

■ Section 3 of the contract does show the intent of the parties that dividends, to the extent stipulated, shall be devoted to the payment of the notes given for the balance of the purchase price, and a purpose, if the dividends be sufficient, to accomplish full payment of the notes in advance of their maturity. But the contract is to be construed as a whole, and effect given to all of its provisions. Section 4 provides for an indemnity against a possible tax liability under certain conditions. It is apparent here that what was uppermost in the mind of the purchaser, Sellers, was that he be protected against a tax liability not shown by the books of the corporation, and not known to him. The vendor, Head, agreed to that principle, but what was apparently uppermost in his mind was that he should not return any amount which he might have received under the contract. The language used, we think, shows that both parties were protecting themselves as regards these contingencies. The contract should, of course, be so construed.

To sustain Head's contention, the status could only be applied to money paid, not money obligated to be paid. This contention would ignore the following language of the contract, which we regard as significant: "In the event, however, said notes have been paid in full prior to the *discovery* of such additional liability, the vendor shall be under no obligation to make good the same." (Italics supplied)

■■ Since this is a recognition of an obligation existing, with an exception in a certain contingency, it follows that the obligation remains in effect in the absence of such contingency. In other words, the giving of credit on one or more of the next maturing notes is upon the conditions that (1) a tax liability be *actually paid* by the corporation, and (2) a note or notes then unpaid on which credit might be made. The vendor's *obligation* to make the credit, however, is conditioned upon a *discovery* of the tax liability. If the purchaser became entitled to a credit by discovery of a liability prior to payment of one or more of his notes, it is not reasonable to suppose that he was nevertheless obliged to accelerate payment of the entire indebtedness so that he could never receive the benefit of the credit. The plea avers, and the evidence tends to show, that a probable liability for taxes was actually discovered by appellee prior to his receipt of any dividends subject to be applied to his notes. This discovery was in the form of notice given to the corporation (and known to appellee) by agents of the Department of Internal Revenue, then engaged in examining the affairs of the corporation, of certain liabilities then uncovered. The examination, commenced within a few weeks after his stock purchase, continued, with subsequently uncovered and asserted items of liability, until in 1945 when a total liability of over $60,000 was finally asserted. While it appears that the corporation admitted liability for lesser amount and tendered payment thereof, it also appears that the offer of compromise had not, at the time of the institution of the suit or when the decree was rendered, been accepted by the Government. So that the matter of final determination of the amount the corporation must pay was still then pending. What credit, if any, appellee may be entitled to receive or what balance, if any, appellant may be entitled to recover on the notes held by him, could not of consequence have been decreed until a final determination of this tax liability. We therefore conclude that the court below properly sustained the plea in abatement.

It remains to consider the amendment to the bill filed during the hearing on the plea in abatement. This amendment alleged an estoppel against the appellee to claim protection under the contract from any tax liability because, in 1946 (shown to have been July 31, 1946), with full knowledge of that liability and knowing that it was caused by certain defalcations, etc., of the

former president (owner of about one half the issued and outstanding stock) of the corporation, appellee caused the corporation to buy the president's stock for $90,-000, a sum which was more than enough to satisfy all tax liabilities and which said president in justice and good conscience owed the corporation and on whose stock the corporation had a lien for the amount so owing it, and that therefore the said appellee "as a result of having destroyed said lien, or his having entered into said agreement [with the president] waived, surrendered, or is now estopped from setting off any part of the said Federal tax, penalties and interest, or state income tax against the complainant's said notes, to collect which this suit is brought." We forego any decision of this question for the reason now to be noticed.

■ This alleged transaction occurred July 31, 1946. The bill was filed February 8, 1946. The plea in abatement was filed March 9, 1946. The amendments to the bill setting up the transaction of July 31, 1946, were filed March 3 and 13, 1947, respectively. The matter so set up does not serve to estop appellee from asserting his dilatory plea. Whether such plea should be sustained is dependent upon the status existing when it was filed. We have a long line of cases which hold that if the cause which justifies an abatement is removed after the plea is filed, that fact does not prevent the plea from having full operation. Interstate Chemical Corp. v. Home Guano Co., 199 Ala. 583, 75 So. 166; Alabama Power Co. v. City of Scottsboro, 238 Ala. 230, 190 So. 412; Weaver Co. v. Longshore, 240 Ala. 345, 199 So. 485; Kemper v. Walker, 241 Ala. 115, 1 So.2d 376; Ford v. Bowden, 243 Ala. 334, 9 So. 2d 906.

Since discovery of the tax liability before the notes are paid is the basis on which they are entitled to credit when the liability is paid, appellant under his contract would be due to credit the notes with thirteen-fortieths of such payments. He therefore, in this suit, could not claim prior to July 31, 1946, when the corporation purchased Baggett's stock, that he

would not be due to credit the notes by reason of such liability. In other words, the transaction of July 31, 1946, cannot reflect on the plea in abatement already filed.

However, while in that status if appellee has a transaction, by which appellant is excused from making the credit as of the later date, appellant can make such claim in another suit and nothing here decided is intended to reflect on whatever substantial rights in connection with the notes involved appellant may have growing out of the last alleged transaction.

In the view we take, it is not considered that the other points advanced by appellant for a reversal need be discussed.

Affirmed.

BROWN, FOSTER, LIVINGSTON and STAKELY, JJ., concur.