Rel: December 13, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

## SC-2023-0624

_____

**Ex parte Caribe Resort Condominium Association Board of Directors et al.**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Robert Simmons et al.**

**v.**

**Caribe Resort Condominium Association Board of Directors et al.)**

**(Baldwin Circuit Court: CV-22-900789)**

STEWART, Justice.

The Caribe Resort Condominium Association Board of Directors ("the board"), Larry Wireman, and Judy Wireman (collectively referred to as "the board defendants"), as well as Caribe Realty, Inc., Caribe, Inc., and Sentinels, LLC (collectively referred to as "the Wireman companies"), seek a writ of mandamus directing the Baldwin Circuit Court ("the trial court") to grant their motion to dismiss the derivative claims asserted by Robert Simmons, among others (see note 1, infra), on behalf of the Caribe Resort Condominium Association ("the Caribe association"). For the reasons explained below, we grant the petition in part, deny the petition in part, and issue the writ.

<u>Facts and Procedural History</u>

The Caribe association is a nonprofit corporation that was formed under the Alabama Nonprofit Corporation Act ("the Nonprofit act"), § 10-3-1.01 et seq., Ala. Code 1975. Its bylaws provide that it was organized for the purposes of providing for the acquisition, management, maintenance, and care of Caribe Resort, a 608-unit condominium in Orange Beach. The Caribe association was organized pursuant to the provisions of the Alabama Uniform Condominium Act ("the Condominium act"), § 35-8A-101 et seq., Ala. Code 1975. The Caribe

association's affairs are generally managed by the board, whose president is Larry Wireman. Judy Wireman, the secretary and treasurer of the board, is an officer of the Caribe association and is responsible for its record keeping and financial affairs. The Caribe association has contracted with the Wireman companies, which are all owned by Larry Wireman, to perform repairs and other services for Caribe Resort.

Simmons and other condominium-unit owners ("the Caribe members"),[1] purporting to act on behalf of the Caribe association, sued the board defendants and the Wireman companies (in addition to the Caribe association, as a nominal defendant), asserting the following claims:

1. Claims against the board defendants for

    (a) breaching duties allegedly owed to the Caribe association pursuant to the Caribe associations' bylaws and articles of incorporation, the Condominium act, and the Nonprofit act, by:

        (i) wasting corporate assets, resulting in the lack of

---

[1]The condominium members are Simmons, Dolores Baudo, Brian Collins, Sandee Collins, Kevin A. Cross, Fred Drews, Jerry Drews, Jay Gates, Danny Chase, Sharon Chase, Deborah Strevy, and David Strevy.

maintenance and upkeep of Caribe Resort's common areas;

  (ii) negligently and wantonly entering into inflated self-dealing contracts with the Wireman companies; and

(iii) misappropriating insurance proceeds and other corporate funds to pay for the Wiremans' privately owned marina.

2. Claims against the Wireman companies for

(a) conspiring in the board defendants' breaches of duties by contracting for services in excessive amounts;

(b) failing to perform their work and services in a workmanlike manner, resulting in damage to Caribe Resort's common areas; and

(c) invoicing for services not provided.

The board defendants and the Wireman companies moved to dismiss the Caribe members' claims, arguing that Alabama law does not recognize derivative actions on behalf of nonprofit corporations. The trial court denied the motion, and this petition followed.

<u>Standard of Review</u>

4

A writ of mandamus is an extraordinary remedy available only when the petitioner can demonstrate: "'(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.'" Ex parte Nall, 879 So. 2d 541, 543 (Ala. 2003) (quoting Ex parte BOC Grp., Inc., 823 So. 2d 1270, 1272 (Ala. 2001)). Although the denial of a motion to dismiss is generally not reviewable by a petition for a writ of mandamus, this Court will review the denial of a motion to dismiss that is premised on whether the plaintiff can assert a derivative action. See Ex parte 4tdd.com, Inc., 306 So. 3d 8 (Ala. 2020).

This Court has explained:

> "In reviewing the denial of a motion to dismiss by means of a mandamus petition, we do not change our standard of review. Id. … Under Rule 12(b)(6), Ala. R. Civ. P., a motion to dismiss is proper when it is clear that the plaintiff cannot prove any set of circumstances upon which relief can be granted. Cook v. Lloyd Noland Found., Inc., 825 So. 2d 83, 89 (Ala. 2001). '"In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [she] may possibly prevail."' Id. (quoting Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993)). We construe all doubts regarding the sufficiency of the complaint in favor of the plaintiff. [Ex parte ]Butts, 775 So. 2d [173,] 177 [(Ala. 2000)]."

5

Ex parte Haralson, 853 So. 2d 928, 931 (Ala. 2003).

Analysis

The board defendants and the Wireman companies argue that the trial court erred in denying their motion to dismiss because, they contend, Alabama does not authorize derivative actions on behalf of nonprofit corporations. In support of that argument, they note that, although certain provisions of the Alabama Business and Nonprofit Entities Code, Title 10A of the Alabama Code, expressly authorize derivative actions on behalf of for-profit corporations, see § 10A-2A-7.41, Ala. Code 1975 ("A stockholder may commence or maintain a derivative action in the right of a corporation to enforce a right of the corporation ...."), limited-liability companies, see § 10A-5A-9.02(a), Ala. Code 1975 ("A member may commence or maintain a derivative action in the right of a limited liability company ...."), and limited partnerships, see § 10A-9A-9.02, Ala. Code 1975) ("A partner may commence or maintain a derivative action in the right of a limited partnership ...."), there are no similar provisions authorizing members of a nonprofit corporation to commence a derivative action on behalf of the nonprofit corporation. That omission, they argue, shows that the Legislature intended to preclude

6

derivative actions for nonprofit corporations. The board defendants and the Wireman companies further note that this Court has never recognized the right of a member of a nonprofit corporation to bring a derivative action on its behalf, and, indeed, we have located no cases in which this Court has recognized such a right.

To further drive home their point that Alabama has made an intentional policy decision against derivative actions for nonprofit corporations, the board defendants and the Wireman companies note the recent enactment of the Alabama Nonprofit Corporation Law. See Ala. Acts 2023, Act No. 2023-503 (codified at § 10A-3A-1.01, Ala. Code 1975). That act adopted the American Bar Association's Model Nonprofit Corporation Act of 2021 almost in full. Notably, however, the Legislature rejected the chapter of the model act concerning "Derivative Proceedings," which would have allowed for derivative claims on behalf of nonprofit corporations generally. Thus, the board defendants and the Wireman companies argue, the Legislature's intentional omission of the entire "Derivative Proceedings" section from the Alabama Nonprofit Corporation Law indicates a policy disfavoring derivative actions for nonprofit corporations. See 2B Norman J. Singer & J.D. Shambie

7

Singer, Statutes and Statutory Construction § 52:5 (7th rev. ed. 2012) ("[W]hen a legislature models a statute after a uniform act, but does not adopt particular language, courts conclude the omission was 'deliberate,' or 'intentional,' and that the legislature rejected a particular policy of the uniform act.").

We find the above arguments to be well taken and conclude that Alabama law does not recognize derivative actions for nonprofit corporations generally.

In their answer, the Caribe members do not argue that this Court should recognize a general right of members of a nonprofit corporation to assert derivative actions. Rather, they contend that their derivative action is permitted under the Condominium act. Specifically, they contend that, because the Caribe association was organized pursuant to the Condominium act, and because the Condominium act imposes upon elected board members and officers of a condominium association the duty of exercising ordinary and reasonable care when acting on the condominium association's behalf, see § 35-8A-303(a), Ala. Code 1975, the Condominium act necessarily authorizes derivative actions to enforce that duty of care. Section 35-8A-303(a) of the Condominium act states, in

pertinent part, that, "[i]n the performance of their duties, the officers and members of the board are required to exercise … ordinary and reasonable care." The Alabama Commentary to that section further provides that, "[s]ince incorporation of the association is required, an action can still exist for breach of fiduciary duty against a director elected by unit owners under corporate law theory (i.e.[,] self dealing or conflict of interest). Ingalls Iron Works v. Ingalls Foundation, 262 Ala. 656, 98 So. 2d 30 (1957)."

The Condominium act, however, does not expressly or impliedly provide the members of a condominium association with a derivative form of action. Rather, as indicated by the above-quoted commentary, condominium associations are -- like other corporate entities -- subject to Alabama "corporate law." Indeed, § 35-8A-301, Ala. Code 1975, provides that a condominium association "must be organized as a profit or nonprofit corporation." As explained by the Alabama Commentary to that section, the reason for requiring incorporation is that the drafters of the Condominium act considered it "desirable" that condominium associations be subject to "the well-developed body of corporate law existing in the State of Alabama." As explained above, however,

Alabama's corporate law does not generally authorize a member of a nonprofit corporation to bring a derivative action. Thus, under Alabama law, members of a nonprofit corporation do not have the authority to bring a derivative action on behalf of the nonprofit corporation against third parties, such as the Wireman companies.

Nevertheless, the Nonprofit act does provide members of a nonprofit corporation the limited ability to seek judicial relief on behalf of the nonprofit corporation. Section 10A-3-2.44(2), Ala. Code 1975, authorizes "a proceeding by the nonprofit corporation, whether acting directly or through a receiver, trustee, or other legal representative, or through members in a representative suit, against the officers or directors of the nonprofit corporation for exceeding their authority." (Emphasis added.) The Caribe members argue that their claims against the board defendants "alleged the [board defendants] exceeded their authority as board members and officers …," Answer at 20, and, indeed, their claims generally assert that the board defendants' actions violated standards of care imposed by statute and the Caribe association's bylaws. Thus, the Caribe members contend that the board defendants' actions were ultra vires acts, and that § 10A-3-2.44, therefore, authorized them

10

to assert their claims in a "representative suit" against the board defendants.

In <u>Carmichael v. Tarantino Properties, Inc.</u>, 604 S.W.3d 469 (Tex. App. 2020), a Texas Court of Appeals addressed a similar argument. In <u>Carmichael</u>, several members of a nonprofit condominium association brought claims on behalf of the association against three directors of the association and other third-party companies that had entered into management or joint-use agreements with the association. Among other things, the association members contended that the directors had exceeded their authority in entering the management and joint-use agreements. The trial court in <u>Carmichael</u> dismissed the action on the basis that the association members lacked standing to bring derivative claims on behalf of the association.

On appeal, the court in <u>Carmichael</u> agreed that, under Texas law, members of a nonprofit corporation did not generally have the right to assert a derivative action on behalf of the nonprofit corporation. However, relying on a statute similar to § 10A-3-2.44, which authorized members of a nonprofit corporation to assert a representative suit against an officer or director of the nonprofit corporation for

11

unauthorized acts, the Carmichael court concluded that the association members could assert claims on the association's behalf against the directors alleging that the directors' actions had amounted to ultra vires acts. Thus, the Carmichael court reversed the judgment to the extent that it had dismissed the claims asserting that the directors had acted beyond their authority in entering into the management and joint-use agreements.

Here, the Caribe members have alleged that the board defendants have entered into contracts with entities owned and/or controlled by Larry Wireman, allegedly for the purpose of wrongfully diverting the Caribe association's funds to Wireman and other board members. The Caribe members have further alleged that such actions are violations of the Nonprofit act and the Caribe association's bylaws and articles of incorporation. For instance, the complaint alleged that the board defendants' actions violated Article III of the Caribe association's articles of incorporation, which, they stated, provided that income received by the Caribe association may be applied only to the purposes and objectives of the Caribe association and that "no part of the net earning thereof shall inure to the benefit of any private member, officer, director, or

12

individual."[2] We note that, in determining whether a complaint is sufficient to withstand a motion to dismiss, this Court must accept the allegations in the complaint as true. See, e.g., Zinn v. Till, 380 So. 3d 1026, 1028 (Ala. 2023). Further, we note that the board defendants have not directly addressed the Caribe members' assertion that their lack-of-authority claims against the board defendants may be asserted on the Caribe association's behalf under § 10A-3-2.44.[3] Accordingly, we conclude that, to the extent that the Caribe members' claims challenge

---

[2]The articles of incorporation are not included in the materials submitted by the parties.

[3]In their reply brief, the board defendants do not respond directly to the argument made by the Caribe members in their answer that they have alleged that the board defendants "exceeded their authority" and that their acts were therefore "ultra vires." In fact, the board defendants included only a single sentence in the mandamus petition arguing that "[n]one of the claims sought to invalidate any transaction made by the Association as ultra vires acts under § 10A-3-2.44, Ala. Code 1975." Petition at 8. It is the burden of the petitioners to establish a "'clear legal right'" in order to obtain a writ of mandamus. Ex parte Nall, 879 So. 2d 541, 543 (Ala. 2003) (citation omitted). Given the failure of the board defendants to explain why each of those claims were not alleging that the officers and directors were "exceeding their authority," the board defendants have not met their burden at this point. Moreover, they do not explain why they believe that § 10A-3-2.44 applies only to claims that seek "to invalidate [a] transaction" when other language in that statute appears to include claims beyond those that seek "to invalidate" a transaction.

13

the board defendants' authority to engage in particular conduct, the board defendants have not established a clear legal right to the dismissal of such claims.

The board defendants and the Wireman companies also contend that the Caribe members have not complied with Ala. R. Civ. P. 23.1 because, they argue, the owners of 8 condominium units cannot fairly and adequately represent the interests of the owners of 608 units. Rule 23.1 states, in pertinent part, that "[t]he derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association."

The board defendants and the Wireman companies insist that their adequacy challenge is a challenge to the Caribe members' "standing" and thus raises a "question of jurisdiction" that this Court should reach now -- at the pleading stage. Petitioners' reply brief at 11. They are mistaken. The question whether the Caribe members will fairly and adequately represent the Caribe association is a fact inquiry that is not a

14

jurisdictional matter.[4] <u>Roberts v. Alabama Power Co.</u>, 404 So. 2d 629 (Ala. 1981) (holding that the determination of adequacy of representation rests largely in the discretion of the trial court and will not be overturned except for an abuse of that discretion). In fact, the board defendants and Wireman companies admit that their adequacy challenge is a factual one, and they assert that they are "challeng[ing] the merits of [the] allegation" that the Caribe members are fair and adequate representatives.[5] Petitioners' reply brief at 12. Moreover, here, the trial court did not make a determination that the class representatives are (or are not) adequate,

_____

[4]Likewise, there is "a heightened pleading standard" in derivative actions, although that heightened standard does not implicate standing or jurisdiction. <u>Ex parte 4tdd.com, Inc.</u>, 306 So. 3d 8, 16 (Ala. 2020) ("Questions pertaining to the heightened pleading requirements of Rule 23.1[, Ala. R. Civ. P.,] do not invoke the plaintiff's standing to bring the substantive claims and do not implicate the trial court's subject-matter jurisdiction."). We need not reach the question whether there might be any requirements that could be "jurisdictional" in derivative actions.

[5]The relevant text of Rule 23.1, Ala. R. Civ. P., is virtually identical to the text of Rule 23(a)(4), Ala. R. Civ. P., which states that "the representative parties will fairly and adequately protect the interests of the class." This requirement is usually determined at the time of class certification -- not at the pleading stage. <u>See</u> <u>generally</u> Ala. Code 1975, § 6-5-641(e) (setting certain prerequisites for any class-certification order). While Rule 23 does not foreclose the possibility of making this determination only on the pleadings, the failure of a trial court to do so is certainly not grounds for mandamus relief.

and thus we cannot reach the question whether such a determination would be an abuse of discretion. Given that the determination of adequacy of representation is not jurisdictional and instead involves the trial court's discretion, and given that the trial court has not even made the determination, the board defendants and the Wireman companies have not met their burden with regard to their adequacy challenge.

## Conclusion

For the reasons stated above, we agree that, under Alabama law, members of a nonprofit corporation have no general right to bring a derivative action on behalf of the nonprofit corporation. Nevertheless, such members do have the ability to bring a derivative action "against the officers or directors of the nonprofit corporation for exceeding their authority." § 10A-3-2.44(2). Thus, in this case, we conclude that the Caribe members' claims asserted against the Wireman companies on behalf of the Caribe association were due to be dismissed, and, as to those claims, we grant the petition and issue the writ. However, the Caribe members' claims against the board defendants are based on assertions that the board defendants acted beyond their authority. As to those claims, we conclude that the board members have not established a clear

16

legal right to an order of dismissal, and we therefore deny the petition in part.

PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.

Parker, C.J., and Mitchell and Cook, JJ., concur.

Shaw, J., concurs in part and concurs in the result, with opinion.

Bryan, J., concurs in the result.

Sellers. J., concurs in part and dissents in part, with opinion, which Wise and Mendheim, JJ., join.

17

SHAW, Justice (concurring in part and concurring in the result).

I concur in the portion of the main opinion granting the petition in part and issuing the writ. Specifically, I agree that Alabama law, generally, does not provide for derivative actions relating to nonprofit corporations; thus, there is no authority for members of a nonprofit corporation to bring a derivative action on behalf of the nonprofit corporation against third parties.

However, § 10A-3-2.44, Ala. Code 1975, does allow certain types of "representative" actions. As pertinent to the arguments in this case, that Code section provides:

> "<u>No act</u> of a nonprofit corporation and no conveyance or transfer of real or personal property to or by a nonprofit corporation <u>shall be invalid</u> by reason of the fact that the corporation was without capacity or power to do an act or to make or receive a conveyance or transfer, <u>but lack of capacity or power may be asserted</u>:
>
> "....
>
> "(2) In a proceeding by the nonprofit corporation, … through members in a representative suit, <u>against the officers or directors of the nonprofit corporation for exceeding their authority</u>."

(Emphasis added.) The type of "proceeding" that Code section allows "through members in a representative suit" is <u>limited</u> and would appear

to allow only a challenge to whether an "act" was "invalid" because "officers or directors" were "exceeding their authority."

The petition, which focuses on the meritorious issues upon which this Court grants the writ, does not demonstrate to me that any claims against the officers or directors named in the complaint cannot proceed under § 10A-3-2.44.  I thus express no opinion as to whether any of the counts of the complaint might state a claim for purposes of § 10A-3-2.44, and I concur in the result to the portion of the main opinion denying the petition in part on this issue.[6]  The trial court's decision that is challenged in this matter is interlocutory; whether the respondents' claims can be pursued under § 10A-3-2.44 awaits further litigation.  Cf. Cutler v. Orkin Exterminating Co., 770 So. 2d 67, 69 (Ala. 2000) ("[B]ecause of the extraordinary nature of a writ of mandamus, the denial of relief by mandamus does not have res judicata effect.").

---

[6]I concur with the portion of the main opinion concluding that the petitioners' challenge regarding Rule 23.1, Ala. R. Civ. P., is premature and denying the petition in part on that ground.

19

SELLERS, Justice (concurring in part and dissenting in part).

I agree with the main opinion that the claims of Robert Simmons and the other condominium-unit owners ("the Caribe members") against the Caribe Resort Condominium Association Board of Directors, Larry Wireman, and Judy Wireman ("the board defendants") fall within the scope of the statute of the Nonprofit Corporation Act ("the Nonprofit act"), § 10A-3-1.01 et seq., Ala. Code 1975, allowing "representative suit[s]" against officers and directors of a nonprofit corporation when they have allegedly committed ultra vires acts, and, therefore, may be brought by the Caribe members against board defendants. See § 10A-3-2.44, Ala. Code 1975. Subsection (2) of that statute allows members of a nonprofit corporation, like the Caribe members, to challenge board activity that exceeds the power authorized by the corporation's bylaws. The ultra vires doctrine has a broad reach and can apply even to torts. First Nat'l Bank v. Henry, 159 Ala. 367, 49 So. 97 (1905). The claims against the board defendants for wasting corporate assets, negligently entering into self-dealing contracts with Caribe Realty, Inc., Caribe, Inc., and Sentinels, LLC ("the Wireman companies"), and misappropriating insurance proceeds could involve ultra vires activities and, if so, would be

20

appropriately actionable under the Nonprofit act. See Richard A. Thigpen, Alabama Corporation Law, § 7:6 (4th ed. 2012). Therefore, those claims could be brought by the Caribe members under § 10A-3-2.44. Accordingly, the board defendants do not have a clear legal right to the dismissal of those claims, and I concur that the petition is properly denied on that basis.

However, I disagree that Alabama law totally precludes derivative actions brought by members of a nonprofit corporation against the corporation's board. As the main opinion acknowledges, the Alabama Business and Nonprofit Entity Code, Title 10A of the Alabama Code, does not expressly authorize a derivative action for a nonprofit corporation despite doing so for for-profit corporations, limited-liability companies, and limited partnerships. See §§ 10A-2A-7.41, 10A-5A-9.02(a), 10A-9A.902, Ala. Code 1975. And as the main opinion additionally recognizes, the Legislature did not adopt the chapter pertaining to derivative actions when it adopted the American Bar Association's Model Nonprofit Corporation Act of 2021 ("the Model Nonprofit act").

Nevertheless, this dispute is not governed solely by the Nonprofit act. The Alabama Uniform Condominium Act of 1991 ("the Condominium

act"), § 35-8A-101 et seq., Ala. Code 1975, equally applies and, in some situations, overrides the Nonprofit act. The Condominium act places a duty of "ordinary and reasonable care" on the elected directors like the board defendants. § 35-8A-303(a)(ii), Ala. Code 1975.[7] The Nonprofit act applies generally to a variety of organizations in Alabama, including charitable organizations, athletic clubs, country clubs,[8] and churches.[9] Its scope is exceedingly broad and applies to a plethora of organizations that have little in common other than that their direct purpose is not to make a profit for their members. See Henry B. Hansmann, Reforming Nonprofit Corporation Law, 129 U. Pa. L. Rev. 497 (1981) (critiquing the application of the same standards to nonprofit organizations that have drastically different purposes); § 10A-3-1.03, Ala. Code 1975.

---

[7]Alabama caselaw recognizes that this duty of care is distinct from the ultra vires doctrine. Sellers v. Head, 261 Ala. 212, 216, 73 So. 2d 747, 750 (1954) ("'[Directors] are liable for losses of the corporation caused by their willful and intentional departures from duty, their fraudulent breaches of trust, their gross negligence, or their ultra vires acts.'" (citation omitted; emphasis added)).

[8]See Cartron v. Board of Governors of Valley Hill Country Club, Inc., [Ms. SC-2023-0015, Nov. 3, 2023] __ So. 3d __ (Ala. 2023) (Cook, J., concurring specially).

[9]See Ex parte Board of Trs./Directors and/or Deacons of Old Elam Baptist Church, 983 So. 2d 1079 (Ala. 2007).

The Condominium act, on the other hand, is specific in scope and effect. This Court has long recognized that, "[i]n the event of a conflict between two statutes, a specific statute relating to a specific subject is regarded as an exception to, and will prevail over, a general statute relating to a broad subject." Ex parte Jones Mfg. Co., 589 So. 2d 208, 211 (Ala. 1991); Downing v. City of Russellville, 241 Ala. 494, 503, 3 So. 2d 34, 41 (1941) (opinion on rehearing). Based on this Court's precedents and the unique aspects of condominium associations that do not apply to other nonprofit corporations, the specific provisions of the Condominium act should govern over the general provisions of the Nonprofit act. Thus, I would interpret § 35-8A-303 to give effect to the statutorily imposed duties and responsibilities of a condominium-association's board of directors and allow condominium-association members to pursue an action when the directors have not met those duties and responsibilities.[10]

---

[10]See Ironman Med. Props., LLC v. Chodri, 268 N.C. App. 502, 509-11, 836 S.E.2d 682, 689-90 (2019) (recognizing that the North Carolina Condominium Act, which is analogous to our own Condominium act and is without a derivative-action section, places a fiduciary duty on the directors of a condominium association to the unit owners who have standing to sue when the directors violate that duty).

The main opinion cites the Alabama Commentary to § 35-8A-301, Ala. Code 1975, which explains that the Legislature's requirement that condominium-owners' associations be organized as corporations was intended to apply Alabama's well-developed corporate law to those associations. However, the main opinion omits that the Legislature enacted § 35-8A-301 in 1990, more than 30 years before the Legislature's partial adoption of the Model Nonprofit act. Therefore, there is no reason to conclude that, when it sought to apply Alabama's well-developed body of corporate law to condominium-owners' associations, the Legislature intended to deprive condominium-association members of the right to challenge a director's breach of duty.

I am not convinced that the Legislature's omission of a derivative-standing provision in an act that applies generally to thousands of organizations in this state means that members of a specific type of organization cannot enforce the duties statutorily owed to them. The specific provisions of the Condominium act should supersede any conflicting provisions of the more general Nonprofit act. Jones Mfg. Co., 589 So. 2d at 211. While § 10A-3-2.44 of the Nonprofit act can provide redress for some bad acts of a director, it does not give members a remedy

24

when other members are ambivalent to the director's violation of the duty of care or when the attorney general chooses not to intervene. See Deborah A. DeMott, Shareholder Derivative Actions: Law and Practice § 2:12 (2024-2025) (discussing the weak enforcement mechanisms offered by ultra vires statutes). I respectfully dissent from the main opinion's conclusion that members of a condominium-owners' association are unable to challenge a director's violation of his fiduciary duty of care.

Wise and Mendheim, JJ., concur.