# Sullivan, Trustee *v.* Central Land Co., *et al.*

## *Bill to Dissolve a Corporation, and to Wind Up Its Affairs.*

(Decided May 18, 1911. 55 South. 612.)

1. *Corporations; Dissolution; Minority Stockholders.*—In a suit by minority stockholders to dissolve the corporation on the ground of an abandonment by the sockholders, the court must determine the right of the parties on the facts existing at the time of the filing of the bill, and the fact that since that time, efforts had been made to put the corporation on a better footing as to the conditions of its property, and as to the formality and regularity of the meetings of the stockholders, and the fact that the time fixed by statute for the life of the corporation has expired since the filing of the bill, cannot be considered.

2. *Same.*—In the absence of evidence of the insolvency of the corporation or bad faith in its management, the court will not order a sale of the property at the suit of the minority stockholders for the dissolution of the corporation.

3. *Same; Abandonment by Stockholders; Meetings Outside the State.*—Although the meeting of the stockholders of a domestic corporation are irregular, or illegal because of the absence of any statute authorizing such meeting, still they show that the stockholders retained an interest in the corporation, and are attempting to exercise its powers, hence, minority stockholders suing for a dissolution of the corporation on the ground of abandonment by the stockholders cannot relie thereon to show such abandonment.

4. *Same; Office in State; Agent in State; Object.*—The purpose of the statute in requiring corporations to keep its principal officer or agent in the state, is to aid the state in the supervision and control of the corporation, and has no regard to the financial interests of the corporation, and a failure to comply with this requirement may or may not evidence a purpose to abandon corporate functions, and hence, the mere fact that a corporation for a time failed to observe the statute, did not show an abandonment, where all the time it had agents in the state for the management of its property.

[Sullivan, Trustee, v. Central Land Co., et al.]

5. *Same; Management of Business; Remedy of Minority Stockholder.*—Where the question of corporate management is one of discretion, or of doubtful event in the undertaking in which the corporation is engaged, minority stockholders cannot resort to equity, their remedy being to sell their stock.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Bill by C. B. Sullivan as trustee, against the Central Land Company, and others, to dissolve the corporation and wind up its business, and affairs. From a decree denying relief complainant appeals. Affirmed.

S. D. & J. B. WEAKLEY, for appellant. The equities of the bill were settled on a former appeal.—*C. L. Co. v. Sullivan*, 152 Ala. 360. Where a private business corporation has failed of the purposes and objects of its creation, a single stockholder may maintain a bill in equity for the sale of the assets and the distribution of the proceeds among those equitably entitled thereto.— *McKleroy v. Gadsden Imp. Co.*, 128 Ala. 190; *Noble v. Gadsden Land Co.*, 133 Ala. 250; (The opinion of the Supreme Court of Alabama in the Noble case is reprinted in 91 American Reports, page 27, with an extensive note, and the decision of the Court on the former appeal of this case is reprinted in Vol. 15, page 420-428 of the American and English Annotated cases, with a digest covering the entire subject under consideration. Reference is made to both of these cases.)— *Miner v. Belle Isle Ice Co.*, 17 L. R. A. 417-418, citing Morawetz on Corporations, 217-407; *Cramer v. Bird*, L. R. 6 Eq. 143. The election of trustees made apparently for no purpose but to keep the company in extension, will not prevent a dissolution of the company.—Wait on Insolvent Corp. p. 304; citing *Re the Jackson Marine Ins. Co.*, 4 Sand Ch. N. Y. 559; *Briggs v. Penniman*, 4 Cowan, N. Y. 387. Upon the dissolution of a cor-

poration its stockholders become tenants in common of its property.—*Pewagic Mining Co. v. Mason*, 145 U. S. 349; *Craft v. Mining Co.* 6 Ga. 467. The existence of the corporation for nearly twenty years, the time limited for its existence, without having done anything to accomplish the purposes for which it was incorporated, is a circumstance to be considered by the Court in determining if the complainant is entitled to relief.—*Merchants, etc., Line v. Wagoner*, 71 Ala. 581.

TOMLINSON & MCCULLOUGH, for appellee. Under the facts in this case, the court properly denied the relief sought.—*Central L. Co. v. Sullivan*, 152 Ala. 360.

SAYRE, J.—The considerations upon which a court of equity will intervene at the suit of a minority stockholder to dispose of the corporate property and distribute its proceeds, thus working a practical dissolution of the corporation, whatever in this last regard may be the precise legal effect of the decree, were well stated by Judge Tyson, in *Noble v. Gadsden Land Company*, 133 Ala. 250, 31 South. 856, 91 Am. St. Rep. 27, and by Judge Denson in this case on a former appeal (152 Ala. 360, 44 South. 644). Any further statement of the general principles involved is now unnecessary. The company in the Noble Case, like the one here, had for its leading, if not exclusive, purpose the realization of speculative profits out of a rapidly advancing market for lands. Then, as now, expectations had been disappointed by a quick subsidence of values to something like a true level. In that case many of the stockholders were nonresidents, the whereabouts of one-third of them unascertainable, and diligent efforts on the part of the president and secretary during a period of five years had failed to secure a meeting of the shareholders. The

fixed charges which the corporation was bound to meet so far exceeded its income that annually a part of the corpus of its estate had to be sacrificed. The company was wholly without credit, and, by reason of the fact that a majority of its shareholders had lost all concern about its affairs, was unable to avert impending ruin. Under these circumstances, the court awarded relief. On the former appeal, Judge Denson, sustaining the bill in this case as against a demurrer, drew a parallel with the case of *Noble v. Gadsden Land Company* as follows: "The only difference between that case and the one in hand is that there the income of the corporation, at the time the bill was filed, was not sufficient to pay expenses, taxes, etc., and annually a portion of its land was sold on that account, and it was shown that the corporation was without credit and its assets were being sacrificed, the corporation, on account of the abandonment of it by the holders of the majority of its stock, being powerless to prevent it; while here it does not appear that any of the property of the corporation has been sacrificed, or even sold, to meet expenses, but the income is alleged to be the same as the outgo. Nevertheless it does appear from the bill in this case that the property from which income is derived is gradually deteriorating in value, and that in a short while the income will not be sufficient to meet the expenses. This being true, the inevitable result will be that, if the corporation continues, it will be in the same condition in this respect as was the one in the case cited."

We are now to say whether the complainant has established the allegations of his bill. Of controlling importance is the inquiry whether at the time of the bill filed the corporation had ceased to be a going concern. It is apparent that since the charges of the bill were preferred such efforts have been made to put the com-

pany on a better footing in respect to the condition of its property and the formality and regularity of the meetings of its shareholders as would hardly leave any question as to its being a going concern at this time. Meantime, also, the term fixed by statute for the life of the corporation has expired. Both these considerations are to be laid aside, and the rights of the parties under the bill determined as of the date of its filing. The Central Land Company was organized under the laws of this state. Between the time of its organization in February, 1887, and the filing of this bill, May 18, 1906, the evidence shows that meetings of the stockholders, attended by a majority of the stockholders in person or by proxy, have been held on 24 occasions in 14 different years; the last five being held in the years 1902, 1904 and 1905. Seven of these meetings, the last on October 3, 1902, were held in this state in seven different years. The rest were held in Kentucky, where the stockholders lived. Appellant interprets the evidence to be in conflict as to whether any meeting were held at all prior to 1900, but we are satisfied that the facts are as they have been stated. Since 1901 stockholders of domestic corporations have been authorized to hold meetings outside of this state upon certain conditions. Acts 1900, 1901, p. 2099; Acts 1903, p. 310; Code 1907, § 3481. Prior to the filing of this bill, the defendant corporation had not complied with the conditions prescribed by the statutes. Appellant contends that such meetings as were held outside of this state were therefore nothing more than congregations from time to time of individuals without corporate relations, without authority of law, and that such meetings were utterly void for all constituent purposes of the corporation. In Maine and Texas it has been held that directors elected at a meeting of shareholders convened outside the state are not even

directors de facto (*Miller v. Ewer,* 27 Me. 509, 46 Am.
Dec. 619; *Franco-Texan Land Co. v. Laigle,* 59 Tex.
339), but elsewhere it has been held that the preferable
view, and one more in accordance with modern ideas,
is that directors elected at such meetings are directors
de facto. *Humphreys v. Mooney,* 5 Colo. 282; *Wright v.
Lee,* 2 S. D. 596, 51 N. W. 706; 10 Cyc. 321. However
that may be, it is to be remembered that the complain-
ant is proceeding, not for the specific purpose of vacat-
ing the charter of the defendant company, but for the
rescue of his individual share of its property. Nor does
he insist that things would have been any better for
him or for the company if all its meetings had been
held inside the state, but he refers to the fact of their
extraterritoriality as evidence of an abandonment of the
purposes of the company, whereas the plain fact is that,
however irregular or even unlawful these meetings may
have been, they satisfactorily prove that the stockhold-
ers retained interest in their company and were at-
tempting to exercise its faculties.

The statutes to which we have referred have required
since 1901 that corporations must keep a principal of-
fice in this state and an agent thereat. This provision
is intended to serve the purposes of the state in the
supervision and control of corporations. It has no re-
gard for the financial interests of corporations. A fail-
ure to comply may or may not evidence a purpose to
abandon corporate functions, depending upon attend-
ant circumstances. In this case the company for a time
failed to observe the statute, but all the while has had
agents in this state for the management of its property.
The land had on it when bought by the company a
number of houses of an inferior sort. In 1888 and 1889
the company improved its property by building seven
new cottages at a cost of something more than $2,000.

The company has from time to time declared small dividends aggregating about 5 per centum on the price paid for its property. When the bill was filed, it had in the treasury about $450. The company's houses to some extent have fallen into decay, but the income has always been sufficient to meet the company's fixed charges. At the time of the filing of the bill, there was no indication whatever that a sacrifice of any of its property would be necessary during the remaining months it had to live under the law of its incorporation, or, for that matter, later. The company's agents during its entire life have paid taxes, collected rents, and rendered regular accounts to their principal. Soon after the investment, it became evident that the property had been bought at a greatly inflated price. And then the main avenue of communication with the business center of the city of Birmingham, a public street, was closed by an adjacent owner under the alleged authority of an act of the Legislature. For some years the company has had a suit pending for the purpose of opening this avenue, and upon the event of that suit, which seems to have been prosecuted with due diligence, the value of the property in considerable measure depends. Meanwhile the real value of property in that neighborhood has been advancing, and the great majority of the stockholders appear all along to have been of the opinion that the money invested in the company could best be retrieved by holding to their property yet a while. There seemed, when this bill was filed, small chance that stockholders would, within the life of the corporation, be able to recover the entire amount of their investment. The problem almost from the beginning seems rather to have been how to minimize losses which events quickly following the incorporation of the company brought about. That original loss cannot be repaired by a de-

cree for the sale of the property. It cannot be said that to wait for a probable advance in a genuine market, when that may be done without further call upon stockholders will be an unprofitable business. And so long as a favorable event appears to be reasonably within the reach of ordinary prudence, and involves no further outlay, the effort to attain it seems to fall legitimately within the purposes had in contemplation when the company was formed and its entire capital invested in this property with the expectation that it would advance in value. The corporate purpose was not to sell merely to be selling, but to sell when that might be done to advantage. The venture was speculative. It may be assumed that the contract among the incorporators contemplated that the issue would be determined within the time fixed by law as the company's term of life. But that term had not expired when the bill was filed. So that the mere lapse of time without a sale of the property is not enough to demonstrate an abandonment of corporate purposes. Nor do the other facts show that the company's property will be consumed in the payment of fixed charges.

There are some other considerations of minor importance pro and con, but we think the merits of the controversy are shown by the facts stated, and that on them the conclusion ought to be that the defendant company was a going concern at the time the bill was filed.

There is no allegation or proof of insolvency or bad faith in the management of the company's affairs.

When the question is one of mere discretion in the management of corporate business, or of doubtful event in the undertaking in which the corporation has embarked, remedy cannot be had by application to a court of equity. *Benedict v. Columbus Construction Co.*, 49 N. J. Eq. 36, 23 Atl. 485. Under the circumstances

shown, if the complainant was dissatisfied with the prospects and progress of his speculation when he filed his bill, his judgment in that regard differing from that of a majority of the stockholders, his only remedy was to sell his stock, whatever may be his rights now that the time set by law for the dissolution of the corporation has arrived. *Noble v. Gadsden Land Co., supra.*

Affirmed.

DOWDELL, C. J., and ANDERSON and SOMERVILLE, JJ., concur.