188 So. 59

**WALDROP et al. v. MARTIN et al.**

**8 Div. 913.**

Supreme Court of Alabama.

April 13, 1939.

Scruggs & Creel, of Guntersville, for appellees.

John W. Brown, of Albertville and D. Isbell, of Guntersville, for appellants.

GARDNER, Justice.

Complainants are minority stockholders in The First National Bank of Albertville, which, by resolution of the stockholders in November 1937, went into voluntary liquidation under the provisions of sections 5220 and 5221 of the United States Revised Statutes, 12 U.S.C.A. §§ 181, 182, with the election of J. W. Bishop, J. V. Waldrop and E. D. Vinyard as a liquidating committee of said bank. The board of directors is composed of J. V. Waldrop, J. W. Bishop, Ralph Smith, W. Smith, E. D. Vinyard, W. L. Howard and J. C. Guest.

The bill seeks injunctive relief against the members of the liquidating committee as well as the board of directors and the bank itself, and the appointment of a receiver to wind up the affairs of the institution. The bill avers the insolvency of the corporation, and seeks to restrain the "corporation, its officers and agents, and all others persons from exercising any of the privileges or franchises pertinent to said corporation; and from collecting and receiving any debts, or paying out, assigning or transferring any of the moneys,

lands, tenements or effects," and injunction. is specifically prayed to issue restraining the "corporation, its liquidating committee and Ralph Smith, and all other persons connected therewith" from exercising any of the privileges above enumerated.

An exception is made as to the Federal Deposit Insurance Corporation, from which a large sum was borrowed, and to which collaterals were pledged and in process of collection by said federal corporation.

The bank, its directors, members of the liquidating committee and remaining stockholders are parties defendant to the bill. Preliminary injunction was issued as prayed. Defendants interposed demurrer to the bill, and motion to dissolve the temporary injunction, the latter being heard upon proof by way of affidavit. From the decree rendered overruling the demurrer and denying the motion to dissolve the injunction, defendants have prosecuted this appeal.

It appears from the bill that in August 1937, upon an examination of the bank's affairs, it was ascertained that Ralph Smith, who was cashier of the bank, had embezzled approximately ninety-five thousand dollars of the funds of the bank, whereupon the directors sold to another bank for a large sum much of the holdings of the bank, which sale was subsequently ratified by the stockholders.

At the same time, in order to pay depositors and creditors in full, the board negotiated a loan with the Federal Deposit Insurance Corporation to an amount of approximately one hundred and forty-one thousand dollars, pledging the bank's remaining assets as security for the note executed therefor. Out of the securities thus pledged, the Federal corporation has collected a sufficient sum to reduce the indebtedness on the loan to approximately sixty-five thousand dollars.

The bill further avers a liability on the cashier's bonds of not less than fifty thousand dollars, and that the bond company has offered a compromise of its liability upon payment of twenty-five thousand dollars, less a premium on one of the bonds. So far as the bill discloses no action has been taken by the liquidating committee or the board of directors as to any such offer, nor is it averred that it will be accepted. But the bill does allege that the board of directors have agreed with the liquidating committee that the committee's bond will be approved with personal surety, rather than with the surety company, and that the liquidating committee have agreed with Ralph Smith that they would appoint him as their agent, and have so appointed him with authority to act for them, with the understanding that said Smith will "settle in some manner the liability" of the surety on his bond, and then pledge the remaining assets of the bank, and procure from said pledged assets and from the bond money enough to pay off the federal corporation, and thus place the whole of the assets in Ralph Smith's hands, and jeopardize the remainder of the assets and cause irreparable loss to the stockholders.

On information and belief it is averred that the election of Ralph Smith as agent for the committee was due to the fact that he and his relatives hold controlling stock of the bank and can vote whom they desire as officers, and thus enable said Smith to handle the affairs of the bank and at the same time try and induce the authorities of the federal government not to prosecute and send him to the penitentiary for embezzlement until after he has fully wound up the affairs of the bank. It is averred that Waldrop of the liquidating committee is a father-in-law of Ralph Smith, and that Bishop and Vinyard, though not stated to be in any manner related, yet are alleged to "appear to be under the control and domination of said Ralph Smith."

In the transactions involved thus far no charge of fraud or even mismanagement is made against either the directors or the liquidating committee of the bank. The sale to another bank involved more than half a million dollars and a large loan was obtained from the federal corporation. Presumably each of these transactions is free from adverse criticism and to the best interest of all. Neither the solvency nor the integrity of any members of the board of directors or the liquidating committee is here challenged, with the exception of Ralph Smith, former cashier, charged with embezzlement. And reduced to the last analysis, the alleged fraud upon which complainants rest their case is the alleged intention of the liquidating committee, who are presumably solvent and under proper bond, to allow Ralph Smith to assist in closing the bank's affairs and in handling its assets.

We may note here the affidavit of the members of the liquidating committee

offered on the hearing of the motion to dissolve the temporary writ of injunction makes positive denial of any intention to allow Ralph Smith to wind up the bank's affairs or have anything to do with winding up the business of the bank, except in a clerical way or by way of giving data and information to those who are engaged in closing the bank's affairs, but that said Smith will not in any event handle any funds collected for the bank.

■ Considering first, however, the demurrer to the bill, we are persuaded the ruling thereon was erroneous. Under the provisions of 12 U.S.C.A. § 91, no injunction is to be issued by any state court against a national bank before final judgment in any suit. Pacific National Bank v. Mixter, 124 U.S. 721, 8 S.Ct. 718, 31 L.Ed. 567; Van Reed v. People's National Bank, 198 U.S. 554, 25 S.Ct. 775, 49 L.Ed. 1161, 3 Ann.Cas. 1154. The demurrer takes the point the bill seeks an injunction against the bank in violation of the federal statute. Complainants' only reply is that the bill seeks only injunctive relief against the directors and not the bank. But we cannot so interpret the language of the bill and its prayer.

We have hereinabove quoted a portion of the prayer of the bill, "that this court issue or direct the issuance of an injunction to restrain the corporation, its officers and agents," which is later repeated in substantially the same language. True, no injunction in fact was so issued, and the writ was confined to the officers and liquidating committee. But we are here dealing with the demurrer to the bill, and we see no escape from the conclusion that the assignment of demurrer was well taken.

■ But the matter of vital concern relates to the matter of substance in the bill. And in considering this feature of the bill a few general observations as to the controlling legal principles are in order. Complainants are minority stockholders, and it is to be borne in mind that "those who embark in a corporate enterprise as stockholders do so under an implied agreement that the business shall be controlled and directed by a majority of the stockholders." Phinizy v. Anniston City Land Co., 195 Ala. 656, 71 So. 469, 471; Dixie Lumber Co. v. Hellams, 202 Ala. 488, 80 So. 872; 14-A Corpus Juris 1123.

■ In the Phinizy case, supra, it was further observed that "so long as the conditions exhibited do not demonstrate to a moral certainty that its continuation must by inevitable necessity result in serious loss in the near future, and in complete ruin sooner or later—a court of equity will not and should not deprive the majority stockholders of their right to carry on their business under their chosen management, however speculative and uncertain its prospects may seem to a disapproving and dissentient minority."

"A minority of stockholders will not be permitted to displace corporate authority and control by substituting therefor the policy, management and control of the courts, except in plain cases of such fraud or maladministration as works manifest oppression or wrong to them." Bridgeport Development Co. v. Tritsch, 110 Ala. 274, 20 So. 16, 20; Henry v. Ide, 208 Ala. 33, 93 So. 860, 867.

" 'When the question is one of mere discretion in the management of the business or of doubtful event in the undertaking in which the concern has embarked, a remedy cannot be sought in a court of equity.' * * * It needs no argument to show that this power of intervention, however wholesome and necessary its exercise may sometimes be, is extremely dangerous in its tendencies, and should be exercised only in the plainest cases." Phinizy's case, supra. See, also, 14 Corpus Juris 851.

■ This is not to say that the minority stockholders have no rights which the courts preserve and protect and enforce. In Henry v. Ide, supra, it was pointed out that, as observed by Mr. Thompson in his work on Corporations, "judicial hesitancy does not mean judicial atrophy or paralysis," and that where, by fraud, conspiracy or covinous conduct or extreme mismanagement, the rights of minority stockholders are put in imminent peril, the strong arm of a court of equity will be extended for their protection. And it was so extended in that case. See Henry v. Ide, second appeal, 209 Ala. 367, 96 So. 698.

■ The question here presented is whether or not the bill makes out a case calling for such intervention. The board of directors and the liquidating committee represent a two-thirds majority of the stock of the bank. Under the federal statute such majority had the right to place the bank into voluntary liquidation (12 U. S.C.A. § 181), and the liquidating agents were duly appointed in conformity with

this statute. They had this right and could exercise it, although it may have been contrary to the wishes and against the interests of the minority stockholders. Watkins v. National Bank of Lawrence, 51 Kan. 254, 32 P. 914; Green v. Bennett, Tex.Civ. App., 110 S.W. 108.

In the instant case there appears to have been no opposition to the voluntary liquidation of the bank nor criticism of the management of the affairs of the bank by the board of directors or liquidating committee. Thus far, so far as here appears, all has gone well and the matter handled as efficiently as a difficult and embarrassing situation could permit. While the liquidating committee is a proper agency for winding up the affairs of the bank, yet it is not a substitute for a receiver. Holland Banking Co. v. Continental National Bank, D. C., 43 F.2d 640. And if the bank is insolvent, as the bill alleges, the Comptroller of the Currency has yet the power to appoint a receiver, notwithstanding the existence of the liquidating committee. O'-Conner, Comptroller, v. Watson, 5 Cir., 81 F.2d 833. The liquidating committee functions under the eyes of the Comptroller of the Currency, to whom such committee must make annual report, and over whom the comptroller has supervision with the right of examination into the affairs of the liquidated bank.

The Texas court in Green v. Bennett, supra, made reference to the right of minority stockholders to proceed against members of the liquidating committee for any injuries sustained by reason of their failure to properly dispose of the assets.

Complainants rely entirely upon fraud as the basis for their relief, the brief insisting that the bill "makes out a case of fraud, pure and simple against the officers of the bank." But it is clear enough these officers have been guilty of no fraudulent conduct thus far.

Fraud is never presumed, but must be established by proof, and in a bill by stockholders against officers or directors of a corporation there should be positive and definite allegations of fact rather than mere conclusions. 14-A Corpus Juris 161.

What, therefore, is the fraud relied upon in the instant case? Basically it is the appointment by the liquidating committee of Ralph Smith to assist in the bank's affairs. True the bill avers Smith has embezzled a large sum of money which, as we gather from the averments, brought on the necessity for the bank's closing. Complainants are opposed to any further activity on his part in winding up the bank's business, and entertain the opinion his agency for the committee will prove disastrous. As cashier Smith was evidently considered more familiar with the details of the business than were the directors or the liquidating committee. The bill does not question his efficiency in that regard, and the averments are properly to be construed as indicating a purpose on the part of Smith, acquiesced in by the directors and members of the liquidating committee, to so wind up the bank's affairs that he might hope for some leniency when brought to trial in the federal court for embezzlement. If so, the incentive would be to render honest and valuable service, rather than the contrary. This would be inconsistent with any apprehension that Smith would again be guilty of embezzlement.

Reduced to the last analysis, therefore, complainants' bill rests upon the theory that Smith's appointment as agent for the committee is wrongful and a fraud as a matter of law, for the sole reason that he had previously been guilty of embezzlement of the funds of the bank. No authorities are cited to sustain this contention.

On the contrary, the New Jersey court in Laurel Springs Land Co. v. Fougeray, 50 N.J.Eq. 756, 26 A. 886, 887, observed: "To justify the employment of these extraordinary powers, there should be, however, something more than an apprehension that the frauds redressed, or others of a like nature, will be repeated in the face of the decree forbidding them."

The bill discloses that Smith and his relatives are largely financially interested in the bank, and we have noted the incentive for prudent conduct in the hope that a successful administration of the bank's affairs will be given consideration in any criminal proceeding against him.

Defendants represent the majority stock, and their management of the bank's affairs is not to be controlled by the courts on behalf of minority stockholders in the absence of fraud or gross mismanagement. A mere matter of discretion in management is not for the courts to re-

view. If these defendants are of the opinion that Ralph Smith can serve them more efficiently, it is not for the minority to complain, unless fraud appears. And we do not consider that such fraud is made to appear by the mere fact that Smith had previously embezzled, as cashier, a large sum.

As to the surety on Smith's bond, the bill shows an offer of settlement for a sum less than complainants think is proper, but no averment that such an offer will be accepted. Upon a question of compromise of settlement of such matter, much judgment and discretion is involved and the matter weighed from many viewpoints.

The committee is under bond, and as previously observed, each is presumably solvent and interested in the proper management of the business. Their work is supervised by the Comptroller of the Currency, who yet has the power, if the bank is insolvent, to appoint a receiver.

Considering the bill from all angles, we are constrained to hold the demurrer thereto should have been sustained.

As for the motion to dissolve the injunction, a stronger case for defendants is presented.

The affidavit offered by defendants shows that the intention is merely to use Smith's knowledge of the bank's affairs and his experience in winding up the business and not to entrust him with any funds whatever. The injunction has tied the hands of the committee and directors. They are powerless to act in any matter relating to the bank.

If, as matters progress, these minority stockholders have cause for grievance, they may apply to the courts upon a proper showing. But we are clear to the view they have not yet shown any cause to thus destroy all power and authority of these defendants as officers of the bank.

It results as our conclusion that the demurrer to the bill was improperly overruled, and that the motion to dissolve the temporary writ of injunction is due to be sustained. The decree will accordingly be here reversed, and one here rendered in harmony with these views, and the cause remanded to the trial court. Reversed, rendered and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.