98 So.2d 30

**INGALLS IRON WORKS CO. et al. (Elesabeth Ridgely Ingalls, et al., Intervenors),**

v.

**INGALLS FOUNDATION et al.**

6 Div. 985, 986, 987.

Supreme Court of Alabama.

May 9, 1957.

Rehearing Denied Nov. 21, 1957.

Chas. W. Greer, Birmingham, for respondent-appellants.

Lange, Simpson, Robinson & Somerville, Jas. A. Simpson, Reid B. Barnes and Daniel J. Meador, Birmingham, for appellees.

Bainbridge & Mims, Birmingham, for intervenors.

LIVINGSTON, Chief Justice.

The bill of complaint as amended was brought by Ellen Gregg Ingalls and James A. Simpson, as a majority of the co-executors of the estate of R. I. Ingalls, Sr., deceased, against the Ingalls Iron Works Company, and R. I. Ingalls, Jr., in the Circuit Court, in Equity, of Jefferson County. The First National Bank of Birmingham, the third co-executor of the estate of R. I. Ingalls, Sr., who refused to join as complainant in bringing this bill, was joined as a party respondent. The bill as amended avers that on April 15, 1943, R. I. Ingalls, Sr., entered into a written contract with the Ingalls Iron Works Company whereby he gave the company the option to purchase the 2,287 shares of its capital stock owned by him, upon his retirement or death. That Ingalls died testate on July 12, 1951. That thereafter the board of directors of the company on four separate occasions adopted resolutions releasing all of the company's right under said contract. That on July 18, 1951, the day after the first said resolution was adopted, Ingalls' stock was delivered to Mrs. Ingalls, James A. Simpson, and the First National Bank of Birmingham, who were nominated executors in the last will and testament of Ingalls, accompanied by a letter of transmittal, which stated that the company released all its rights under said option contract to purchase the stock. That since this time, the stock has remained in the hands of these persons, who on August 2, 1951 were named executors of Ingalls' estate. That on December 30, 1952, a reconstituted board of directors rescinded the resolutions of the old board and elected to purchase said stock. The bill seeks to set aside the action taken by the reconstituted board on grounds that as a result of the actions taken by the old board the company relinquished all of its rights to purchase the stock involved and for that reason the acts of the reconstituted board in regard to this contract were inefficacious and void, and further that if the company did not effectively relinquish its right to purchase the stock as a result of the actions taken by the old board, the subsequent action taken by the reconstituted board in regard to this stock was without legal effect for the action was the direct result of the fraudulent conduct of R. I. Ingalls, Jr.

The respondents demurred to the bill as a whole and specifically to each aspect thereof. Said demurrer was sustained as to that aspect charging that the action of the reconstituted board was the result of the fraudulent misconduct of R. I. Ingalls, Jr., and overruled as to all other aspects. From this ruling respondents appeal.

The contract provides as follows:

"*This Option,* made this 15 day of April, 1943, by R. I. Ingalls and his wife, Ellen G. Ingalls (hereinafter called stockholder and wife, respectively), with and in favor of The Ingalls Iron Works Company, a corporation organized and existing under the laws of the State of Delaware, (hereinafter called the Coorporation).

"Witnesseth:

"Whereas, of the total of 15,000 shares of the issued and outstanding capital stock of the Corporation, Stockholder is the owner and holder of 2,287 shares representing a twenty-two hundred and eighty-seven fifteen thousandths (2,287/15,000) interests in the Corporation as now evidenced by certificates as follows:

"Certificate No. | Shares
--- | ---
"31 | 2,283
"34 | 4;

"Whereas, the present successful status of the Corporation is entirely attributable

to the painstaking efforts and splendid co-operation of the stockholders and it is the desire of the Stockholder that the splendid harmony and the continuity of management be not disturbed in the event of the retirement or death of the Stockholder, by the interest of the Stockholder in the Corporation passing to outside and disinterested persons; and

"Whereas, it is the desire of the Stockholder upon his retirement or death not only to protect the remaining or surviving stockholders of the Corporation by insuring the return of all his stock to the Corporation, *at its election,* but also to assure the remaining or surviving stockholders that upon his retirement or death *his interest* in the Corporation, as herein described, may be retired at the price and under the terms as hereinafter provided.

"Now, Therefore, in consideration of the premises and the sum of One Thousand ($1,000.00) Dollars cash in hand paid to Stockholder and his wife by the Corporation, the receipt whereof is hereby acknowledged, and in further consideration of the mutual undertakings and covenants of the parties hereto as hereinafter set forth, it is agreed:

"1. That at any and all times during the life of the Stockholder and for thirteen (13) months after his death, the Corporation shall have a right, exercisable by written notice to the Stockholder prior to his death or by written notice to the executors, administrators or other legal representatives of the Stockholder subsequent to his death, to purchase all or any part of the twenty-two hundred eighty-seven fifteen thousandths (2,287/15,000) interest which the Stockholder now holds in the Corporation, as represented by the 2,283 shares of stock and the 4 shares of stock and evidenced by Certificate No. 31 and Certificate No. 34, respectively, as aforesaid, and any renewals or reissues thereof and said stock's pro rata proportion of any dividends declared on the issued and outstanding stock of the Corporation in the form of additional stock in the Corporation. *In the*

*event the Corporation shall elect to purchase all of the interest and stockholdings of the Stockholder in the Corporation,* as evidenced by said Certificate No. 31 and No. 34 and any certificates evidencing any renewals or reissues thereof and dividends declared thereon in the form of additional stock in the Corporation, then the Corporation shall pay therefor (a) the aggregate sum of One million eighty thousand and no/100 ($1,080,000.00) Dollars, plus (b) the amount of cash dividends which shall have then been declared thereon but be unpaid. *In the event, however, that the Corporation shall elect to purchase only part of the interest of the Stockholder in the Corporation,* as hereinabove described, then the Corporation shall pay for the part so purchased (a) an amount which bears the same ratio to the said aggregate sum of $1,080,000.00 as the part so purchased bears to the entire interest of the Stockholder in the Corporation as described and referred to in this paragraph 1, plus (b) the amount of any cash dividends which shall then have been declared on the part so purchased but be unpaid. *Any such purchase, if made,* shall be upon the terms and conditions herein contained.

"2. That the stock certificates described in paragraph 1 hereof and all certificates evidencing any renewals or reissues thereof and all certificates evidencing any additional stock issued as dividends on the said interest of the stockholder in the Corporation, shall be endorsed as follows:

"This stock certificate is subject to *an option to purchase* dated April 15, 1943, in favor of the Ingalls Iron Works Company."

That the stockholder agrees to assign and deliver, concurrently with the execution and delivery of *this Option* said stock certificates No. 31 and No. 34, properly endorsed, to the Corporation, *as Trustee only,* for the purpose of *this Option.* Stockholder will and shall likewise assign and deliver to the Corporation, *As Trustee only,* promptly as and when issued, all stock certificates evidencing any renewals or re-

issues of said stock certificates No. 31 and No. 34 and all certificates evidencing any additional stock issued by the Corporation as dividends on the said interest of the Stockholder in the Corporation, for the purpose of *this Option* and endorsed as above prescribed.

"3. That the stock owned by Stockholder and subject to *this Option* shall be voted by him and he shall receive all dividends declared and paid thereon and other rights accruing thereunder during his natural life, and, after his death, said stock shall be voted by his legal representatives, who shall receive all dividends declared and paid thereon and other rights accruing thereunder until such time as *the option granted herein shall have been exercised, if the same be exercised,* and the purchase pursuant thereto shall have been completed; provided, however, that all dividends paid in the form of additional stock in the Corporation shall, promptly as and when received, be assigned, endorsed and delivered to the Corporation, as Trustee, for the purposes of *this Option* as provided in paragraphs 1 and 2 hereof and the full consideration therefor is included within the consideration as provided in said paragraph 1.

"4. That in addition to *the Option* granted to the corporation as provided in paragraph 1 hereof, *the Corporation shall have the right,* exercisable by written notice at any time within the time provided in paragraph 1 hereof, *to repurchase from the stockholder or his executors, administrators or other legal representatives all or any part of any new stock* (but such renewals or reissues of the present stock owned by the Stockholder or any additional stock issued as dividends thereon as are included within the option granted to the Corporation under paragraph 1 hereof, shall not be construed as new stock) which may be hereafter issued by the Corporation and purchased by the Stockholder, whether purchased by him pursuant to any rights accruing to him as a stockholder or record of the Corporation or otherwise; *such purchase, if made,* to be at and for the same price per share paid therefor by the Stockholder, plus the amount of any cash dividends which shall have then been declared thereon but be unpaid, *and such purchase, if made,* shall, except as provided in this paragraph 4, be subject to all other terms and provisions of *this Option.* The certificates evidencing any stock which may be acquired by the Stockholder as provided in this paragraph 4 shall promptly, when and as received by the Stockholder or his executors, administrators, or other legal representatives, be assigned, delivered, endorsed and held as provided in Paragraph 2 hereof and shall, except as provided in this paragraph 4, be subject to all other provisions of *this Option.*

"5. *That in the event the Corporation shall,* pursuant to the terms hereof, *elect to purchase all or any part of the interest of the Stockholder in the Corporation,* as aforesaid, it shall pay over the purchase price therefor, as provided in paragraph 1 hereof or paragraph 4 hereof, as the case may be, to the Stockholder or the executors, administrators or other legal representatives of the Stockholders, as the case may be, and the corporation, as Trustee, shall thereupon transfer and deliver the certificates evidencing the interest of the Stockholder in the Corporation so purchased to the Corporation, free and clear of all liens and claims of any persons whosoever.

"6. That to assure the Stockholder that the Corporation will be able to carry out the terms hereof, *should the option herein granted be exercised by the Corporation as herein provided,* the Corporation has caused the life of the Stockholder to be insured in the amounts set forth in Schedule 'A' attached hereto and made a part hereof, each of which policies has been made payable to the Corporation. The Corporation may obtain further and additional insurance on the life of the Stockholder for the purposes herein expressed and, in such event, the policies shall be added to and made a part of said Schedule 'A' with the same force and effect as if originally included therein.

"7. That the Corporation shall pay all the premium deposits on the insurance policies referred to in paragraph 6 hereof promptly as they become due.

"8. That all rights under the said policies, such as, but not limited to, the right to dividends, loans, surrender, and change of beneficiary, shall be reserved to the Corporation.

"9. That upon the death of the Stockholder the Corporation shall immediately make claim for and collect the net proceeds of the policies of insurance, of which it is then the Owner, covering the life of the Stockholder and hold the proceeds in a separate fund *as Trustee* (except as to an amount of such proceeds as shall be equal in value, as herein fixed or determinable, of any part of said interest of the Stockholder in the Corporation which shall have been theretofore purchased and paid for or released and freed from the terms of *this Option,* as herein provided) subject to the following conditions:

"(a) *In the event the Corporation shall elect to purchase all or any part of said interest of the Stockholder as herein provided,* then the Corporation shall apply the net proceeds of said policies, or such amount thereof as shall be required, against the purchase of such of the *said interest as the Corporation shall elect to purchase,* at the price fixed or determinable as provided in paragraph 1 hereof or paragraph 4 hereof, as the case may be.

"(b) *At such time prior to the expiration of the time allowed in paragraph 1 hereof for the purchase of said interest of the Stockholder in the Corporation as the Corporation shall give notice of its decision to release and free from the terms of this Option any of said interest,* then such amount of the said insurance proceeds as shall be equal to the value as fixed or determinable, as herein provided, of the interest so released and freed shall become the property, absolutely, of the Corporation free of any trust.

"(c) *At the expiration of the time allowed in paragraph 1 hereof for the pur-* *chase of said interest of the Stockholder in the Corporation, all the said insurance proceeds, or such amount thereof as shall not have been applied to the purchase of any of said interest within such time, shall become the property, absolutely, of the Corporation free of any trust.*

"10. *That in the event the Corporation shall, at any time prior to the death of the Stockholder, give written notice to the Stockholder of its decision to release and free from the terms of this Option all or any part of said interest of the Stockholder,* then, and in such event, the Stockholder shall have a right, exercisable by written notice to the Corporation, to take over not to exceed an amount of the said insurance policies on his life, as described in Schedule 'A' hereto attached and such further and additional insurance policies as may be hereafter added to said Schedule 'A', as shall be equal in value, as herein fixed or determinable, *to the interest so released and freed from the terms of this option,* by and upon paying to the Corporation the full cash value of such policies so taken over as of the date of such payment and the full amount of all unpaid dividends thereon as shall have accrued to such date; provided however, that the right given to the Stockholder as contained in this paragraph 10 shall in any and all events terminate at the death of the Stockholder, irrespective of whether or not the Stockholder shall have, prior to his death, given notice of his election to exercise such right, unless prior to his death he shall have actually and physically paid over to the Corporation the full cash value of such policies and the full amount of all accrued and unpaid dividends thereon, as aforesaid.

"11. That *this Option* shall terminate upon the bankruptcy, insolvency or dissolution of the Corporation.

"12. That *this Option* shall be binding and inure to the benefit of the parties hereto, their heirs, executors, administrators,

successors and assigns and shall be irrevocable by the Stockholder.

"Any option or options heretofore given by the Stockholder and his wife to the Corporation (other than such repurchase rights as the constitution and by-laws or certificates evidencing the stock herein described or referred to) to purchase any interest of the Stockholder in the Corporation are hereby, by mutual consent, rescinded and withdrawn and shall be of no force and effect whatsoever.

"In Witness Whereof, the said R. I. Ingalls and his wife, Ellen G. Ingalls, have hereunto set their hands and seals and The Ingalls Iron Works Company, a corporation, has caused this instrument to be executed and its corporate seal hereunto affixed, this the day and year first above written.

"Attest:             /s/ R. I. Ingalls
"/s/ M. F. Pixton    /s/ Ellen G. Ingalls
    "Secy.
                     "The Ingalls Iron
                        Works Company
                     "By /s/ Robert I.
                        Ingalls, Jr."

■ The terms of the contract are explicit in regard to the matter involved in this cause. The contract was in fact an option contract. The directors had the right to exercise the option, to release it, or to allow it to expire by the passage of time. The bill avers facts which show that it was in the interest of the corporation and, therefore, the stockholders, to release the option. A matter of discretion in management is not for the courts to review. Waldrop v. Martin, 237 Ala. 556, 188 So. 59; Sullivan v. Central Land Co., 173 Ala. 426, 55 So. 612; 13 Fletcher, Cyc.Corp. (Perm. Ed.) § 5821.

The appellants' contention that Ingalls Iron Works Co. v. Ingalls, 256 Ala. 124, 53 So.2d 847, 848 is determinative of the issues involved in this cause is without merit. In that case, the company brought a bill against R. I. Ingalls, Jr. seeking specific performance of a contract, identi-

cal in all material respects to the one involved in the present cause. The company also sought the instruction and advice of the court as to what right the corporation, "as trustee only for the purpose of this option," had to use the stock delivered to it under said contract. The lower court sustained a demurrer to the bill and ruled that from anything appearing on the face of the bill, the bill could not be amended so as to give it equity, and dismissed the cause. This court in affirming the lower court, held that the involuntary removal of R. I. Ingalls, Jr. from the offices that he held in the company at the time the option was executed did not mature the company's right to exercise the option. It is true that in that case Justice Brown determined that Robert I. Ingalls, Sr., Mrs. Ingalls, and R. I. Ingalls, Jr. in executing substantially identical contracts were dealing *inter sese* and for their mutual benefit, and that their purpose in so dealing was to keep the stock from passing out of the family. And further that the corporation was "stakeholder and depository and a mere bailee," and as such the only right or duty resting on it was "to hold the stock for the purposes and subject to the maturity of the option." This case in no way holds that an absolute duty devolved upon the corporation to purchase the stock upon the happening of an event which would give it the right to purchase the stock.

Appellants further argue that the bill shows that the resolutions adopted by the old board of directors were void or voidable at the instance of the corporation because of the divided fiduciary loyalty and personal pecuniary interest of some of the directors.

The bill avers that R. I. Ingalls, Sr. died testate on July 12, 1951. That Mrs. Ingalls was a beneficiary under the will of R. I. Ingalls, Sr., deceased, and an executrix of his estate. That Mrs. Ingalls and Marvin F. Pixton were trustees of the Ingalls Foundation, a beneficiary under Ingalls' will. That the Ingalls Foundation is a non-profit corporation, organized exclusive-

ly for charitable, scientific, literary, and educational purposes, and that no part of its net income can inure to the benefit of any private stockholder or individual. That Mrs. Ingalls and Pixton are trustees of certain living trusts, the corpus of which consists of shares of stock in the Ingalls Iron Works Company. That on July 17, 1951, the board of directors of the Ingalls Iron Works Company, composed of Mrs. Ingalls and Pixton, unanimously adopted a resolution electing not to exercise the corporation's right to purchase the stock held by R. I. Ingalls, Sr. in the company at the time of his death. That on August 7, 1951, W. R. Guest was elected by the directors to the board to fill the vacancy created by the death of R. I. Ingalls, Sr., and a second resolution electing not to exercise the corporation's right to purchase said stock and releasing all rights that the corporation had under said option contract was passed by a majority of the directors—Mrs. Ingalls refraining from voting. That on September 21, 1951, the by-laws of the corporation were amended to state that the board of directors should not be less than three nor more than five, and K. H. Gayle, Jr. was elected to the board. That on June 30, 1952, prior to which time Pixton had resigned as trustee of the Ingalls Foundation, the board of directors, composed of Mrs. Ingalls, Gayle, guest and Pixton, unanimously adopted a resolution adopting the action taken by Gayle, as President of the company in making a written agreement with the executors of Ingalls' estate extending the time limit in which the company had the right to exercise the option to nineteen months after the death of Ingalls, in lieu of the thirteen months provided for in the contract, and a resolution electing not to purchase the stock owned by Ingalls at the time of his death and releasing all rights that the company might have under said option contract. On August 5, 1952, the board, composed of the same members, unanimously adopted a resolution adopting the action taken by the board in respect to said option on the three previously mentioned occasions.

■ Directors of a corporation, though technically not trustees exercise functions of a fiduciary character. O'Conner Min. & Mfg. Co. v. Coosa Furnace Co., 95 Ala. 614, 10 So. 290, 36 Am.St.Rep. 251. And a director cannot act as such in a transaction which will affect his personal pecuniary interest. Holloway v. Osteograf Co., Inc., 240 Ala. 507, 200 So. 197; Holcomb v. Forsyth, 216 Ala. 486, 113 So. 516. Therefore, since Mrs. Ingalls could personally benefit by the action taken by the directors in regard to the stock option in question, the resolutions would have been voidable at the instance of the corporation or stockholders, without regard to the question of actual injury or detriment to the corporation, if Mrs. Ingalls had been necessary in making up a quorum of the board (Holcomb v. Forsyth, supra; 3 Fletcher Cyc.Corp. [Perm. Ed.] § 938, p. 387), or if her vote had been necessary in adopting the resolutions. Holloway v. Osteograf Co., Inc., supra; 3 Fletcher Cyc.Corp. (Perm. Ed.) § 936, p. 381.

■ The Restatement of the Law of Trusts, § 170(q) provides:

"Q. Duty of trustee under separate trusts. Where the trustee is trustee of two trusts if he enters into a transaction involving dealing between the two trusts, he must justify the transaction as being fair to each trust. If the circumstances are such that the interests of the beneficiaries of the different trusts are so conflicting that the trustee cannot deal fairly with respect to both trusts, he cannot properly act without applying to the court for instructions."

This rule has been adopted by this court. First Nat. Bank of Birmingham v. Basham, 238 Ala. 500, 191 So. 873, 125 A.L.R. 656; Birmingham Trust & Savings Co. v. Strong, 239 Ala. 118, 194 So. 200. In the Basham case, this court held that if a trustee has no personal interest to serve, there is nothing inherent in a transaction, wherein the trustee is trustee for both buyer and seller, inconsistent with full loyalty to both trusts.

See 3 Bogert on Trusts and Trustees, § 543, p. 384; Annotation, 129 A.L.R. 150.

In the instant cause the bill shows that Pixton had no personal interest to serve by the action taken by the directors on the option contract, and that there was no direct dealing between Pixton as director of the corporation and Pixton as a director of the Ingalls Foundation or as trustee of certain of the Ingalls trusts. It is shown by the bill that the Foundation could possibly be affected by the action taken on the option contract, but it is not definitely shown that such would be the case. The bill shows that the Ingalls trusts would be affected by the action taken on the option contract in that if the option was exercised the outstanding stock in the Ingalls Iron Works Company would be reduced from 15,000 to 12,713 shares of common stock, and that the corpus of the trusts consisted of stock in the corporation.

■ We do not think that Pixton's being a director of the Ingalls Foundation which could only incidentally be affected by the action taken on the option contract by the directors would disqualify him to act as a director in regard to the option contract. But the bill further shows that Pixton resigned as a director of the Ingalls Foundation prior to the adoption of the third and fourth resolutions. Certainly, the mere fact that he had once been a director of a charitable corporation which could incidentally be affected by the action taken on the option contract by the directors would not disqualify him to act as a director in regard to said option contract. Nor would being a trustee of two of the Ingalls trusts disqualify Pixton to act as a director on this transaction. In Ingalls v. Ingalls, 257 Ala. 521, 59 So.2d 898, this court stated that the very life-blood of the trusts here involved depended upon the continued prosperity of the Ingalls Iron Works Company and its ability to pay dividends. The bill further shows that Pixton thought it in the interest of the corporation and the stockholders not to exercise the option. Therefore the bill does not show that Pixton was not qualified to act as a director in regard to the stock option.

■ If a director who has a personal pecuniary interest in a transaction is not necessary to constitute a quorum and his vote is not necessary to the transaction, the transaction is valid and cannot be set aside, unless the transaction is unfair to the corporation and the directors have acted in bad faith. Holcomb v. Forsyth, supra; 2 Fletcher Cyc. Corp. (Perm. Ed.), § 426; Annotation, 24 A.L.R.2d 71, 95. There is a presumption that directors of a corporation will do their duty, but this presumption is overcome by the presence of causes sufficient to influence them to do otherwise. Montgomery Traction Co. v. Harmon, 140 Ala. 505, 37 So. 371; Decatur Mineral Land Co. v. Palm, 113 Ala. 531, 21 So. 315, 59 Am.St.Rep. 140. The bill shows that Mrs. Ingalls was the only director individually owning stock in the company at the time the resolutions electing to release the option were adopted, however, this is not sufficient in and of itself to show that the transaction was unfair to the corporation and that the directors acted in bad faith; especially since the bill affirmatively shows that the disinterested directors thought it in the interest of the corporation to release said option.

The lower court did not err in overruling the demurrers to the bill of complaint as amended.

Without waiving its demurrer, the respondents entered an answer to the complaint which it asked to be considered in the nature of a cross-bill. The answer avers that contemporaneously with the execution by R. I. Ingalls, Sr. of the contract set out in the bill of complaint, his wife, Ellen Gregg Ingalls, and his son, R. I. Ingalls, Jr. each executed an instrument substantially identical with the contract executed by R. I. Ingalls, Sr. That at the time said three instruments were executed, these three individuals owned 8,195 shares of the 15,000 shares of capital stock of the Ingalls Iron Works Company then outstanding, and that they constituted a majority of the board

of directors of said company. That by reason of the aforesaid facts and relationships the said instruments constituted a single agreement entered into by the controlling stockholders of the company, whereby these stockholders were dealing with themselves and using the company as a bailee or stakeholder for the purpose of keeping the stock owned by these three stockholders in the Ingalls family. That these contracts did not authorize the company to convert said stock to its own use or to the use or benefit of the executors of the estate of R. I. Ingalls, Sr. or to any one else. Respondents further aver that under the aforesaid contracts the company was required to insure the life of each of the three contracting stockholders. That in so doing the company used the assets of the company of which the stockholders were the equitable owners. That the full accomplishment of the aforesaid purpose of the contracting parties would ultimately result in vesting the sole ownership of the company in the surviving stockholders. That the resolutions releasing the stock were adopted without the consent of said stockholders other than Mrs. Ingalls and the trustee-stockholder, M. F. Pixton. That if the respondents are mistaken as to the nature and effect of the three instruments, that the resolutions adopted as alleged in the complaint constitued an abuse of discretion on the part of the directors and amounted to a fraud perpetrated by the directors upon all the stockholders except Ellen Gregg Ingalls, for Ellen Gregg Ingalls was a beneficiary under R. I. Ingalls, Sr.'s will and that the contracts provided that the company could purchase the stock for $470 per share and at the time of Ingalls' death the stock was reasonably worth $1,000 per share. That if the company had exercised the option it would have greatly increased the value of the stock owned by the stockholders and their aliquot ownership of the company. That by not exercising the option, Ellen Gregg Ingalls was enriched at the expense of all of the other stockholders. That the action taken by the directors was properly rescinded by a resolution adopted by the directors on December 30, 1952, and that on that date a resolution was adopted to exercise said option. That since that date the treasurer of the company has tendered the contract price to the executors of the estate of R. I. Ingalls, Sr. and that the company has at all times since said tender been ready, willing and able to deliver said sum to the executors and that the executors have failed or refused to accept the tender and have refused to deliver to the company the certificates of stock. Respondents pray that all the legal owners of the stock in the Ingalls Iron Works Company be made party respondents and that the court will find that the option on the stock owned by R. I. Ingalls, Sr. at the time of his death has been duly exercised and that the certificates evidencing the ownership of said stock are the property of the Ingalls Iron Works Company and that the executors of Ingalls' estate be required to surrender said certificates to the company.

■ Complainants demurred to the answer and cross-bill, in so far as the same is treated as a cross-bill. The lower court sustained the demurrer and from this ruling respondents appeal. The demurrer was addressed to the cross-bill as a whole "and to each paragraph thereof, separately and severally, and to each phase and aspect thereof, separately and severally." This court has repeatedly held that this is a demurrer to the bill as a whole. Thompson v. Hanna, 262 Ala. 467, 80 So.2d 267; Smith-Howard Gin Co. v. Ogletree, 251 Ala. 366, 37 So.2d 507; Alabama State Milk Control Board v. Graham, 250 Ala. 49, 33 So.2d 11; First Nat. Bank of Birmingham v. Bonner, 243 Ala. 597, 11 So.2d 348. And the ruling of the lower court sustaining the demurrer must be reversed if any aspect is good. Tyler v. Copham, 245 Ala. 151, 16 So. 2d 316.

■ The contracts executed by the aforesaid stockholders were in fact option contracts. The corporation was given the right to exercise or to release the option. The averred legal effect of said contracts is a mere conclusion of the pleader, and inconsistent with the actual effect of the con-

tracts, which were made exhibits to and incorporated in the bill of complaint.

Directors owe a duty of managing the corporate affairs honestly and impartially in behalf of the corporation and all of the stockholders. Sellers v. Head, 261 Ala. 212, 73 So.2d 747; Van Antwerp Realty Corporation v. Cooke, 230 Ala. 535, 162 So. 97. However, we have determined that the directors had the right to exercise or to release the option involved in the present cause. The answer does not aver any facts which show that it was not in the interest of the corporation to release the option; and the mere fact that the board released its right to the stock thereby indirectly enriching one stockholder, whereas if it had exercised the option it would have thereby increased the value of the stock owned by all of the stockholders and their aliquot ownership of the company, does not as a matter of law amount to fraud or maladministration on the part of the directors which would render the action taken by them voidable.

Equity Rule 26, as amended, Code 1940, Title 7, Appendix, provides in part:

"When the presence of parties other than those to the original bill is required for the granting of complete relief, such outside persons may be made defendants to a cross-bill incorporated in the answer or otherwise."

This rule has been interpreted by this court to mean that the mere bringing in of new parties whose presence is necessary to the granting of complete relief is sufficient justification for a cross-bill seeking affirmative relief. Adam v. Mathieson Alabama Chemical Corp., 262 Ala. 166, 77 So.2d 667; McAllister v. Catchings, 210 Ala. 392, 98 So. 303.

It has been determined that the corporation had the right to exercise or to release the option involved in this cause, and the question raised in this cause is whether the option has been exercised or released. The mere fact that the action taken on this contract by the board of directors will indirectly and incidentally affect the stockholders, does not make the stockholders necessary or proper parties in this cause.

As appellants argue, the property of a corporation is treated in equity as owned by the stockholders (Riley v. Bradley, 252 Ala. 282, 41 So.2d 641); however, the stockholders are not necessary or proper parties in a cause involving a corporate contract, solely because the assets of the corporation were used in furnishing the consideration for said contract. Riley v. Bradley, supra.

There was no error in sustaining the complainants' demurrer to the cross-bill.

Elesabeth Ridgely Ingalls and Barbara Gregg Ingalls, minors under the age of 21 years, by their guardian, R. I. Ingalls, Jr., sought to intervene in this cause. The complainants demurred to the complaint of intervention. The lower court sustained the demurrer and dismissed the application, and from this ruling the intervenors appeal.

The complaint of intervention shows that Elesabeth Ridgely Ingalls owns 55 shares of common stock in the Ingalls Iron Works Company, and that she and Barbara Gregg Ingalls are cestui que trustents of several trusts, the corpus of which consists of stock in the Ingalls Iron Works Company.

Intervention in equity is regulated by the provisions of Equity Rule 37 and § 247, Title 7, Code of Alabama, and both the rule and the statute provide for intervention by one who has an *interest* in the matter in litigation. Rollins v. Deason, 263 Ala. 358, 82 So.2d 546.

Stockholders may intervene in actions against the corporation *only when the corporation refuses to defend or fails* to defend in good faith. Ex parte Gray, 157 Ala. 358, 47 So. 286, 131 Am.St.Rep. 62; 13 Fletcher, Cyc. Corp. (Perm.Ed.) §§ 5853–5858; 18 C.J.S. Corporations § 560, p. 1276; Annotation, 33 A.L.R.2d 473. The complaint of the applicants does not in any

respect show that the directors of the Corporation are not adequately defending this cause.

We have determined that the Corporation had the right to exercise or to release the option involved in this cause. The question involved in this cause is whether or not the option has been released. Such determination will indirectly and incidentally affect the applicants as stockholders. However, this does not make the applicants necessary nor proper parties in the absence of showing that the Corporation is not adequately defending this cause. When the applicant is neither a necessary nor a proper party, intervention is not permissible. Rollins v. Deason, supra.

There was no error in sustaining the demurrer to the bill of intervention and dismissing the cause.

It results that the three decrees appealed from are affirmed.

Affirmed as to all three decrees.

LAWSON, STAKELY, and MERRILL, JJ., concur.